929 F.2d 297
 Eric ROTHNER, doing business as Chicago Game Company, doing
business as Bell Vending, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a Municipal Corporation, Richard M. Daley,
* as Mayor of the City of Chicago, and LeRoy
Martin, as Superintendent of the Chicago Police Department,
and their agents, officers, servants and employees,
Defendants-Appellees.
 No. 89-3614.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 18, 1990.
Decided April 1, 1991.
 
 Kenneth Rosenburg, Lincolnwood, Ill., Glenn Seiden, Seiden & Associates, Chicago, Ill., for plaintiff-appellant.
 Gregory J. Wojkowski, Corp. Counsel, Ruth M. Moscovitch, Asst. Corp. Counsel, William B. Mackin, Frederick S. Rhine, Carolyn A. Bird, and Kelly R. Welsh, Asst. Corp. Counsel, Appeals Div., Chicago, Ill., for defendants-appellees.
 Before POSNER, RIPPLE and MANION, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 Eric Rothner brought a civil action that challenged the constitutionality of a City of Chicago ordinance prohibiting minors from playing video games during school hours. He appeals the dismissal of his complaint for failure to state a claim. For the following reasons, we affirm the judgment of the district court. 725 F.Supp. 945.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 The City of Chicago (City) enacted an ordinance that regulates the use of "automatic amusement devices" (commonly known as video games). With the express purposes of encouraging "all minors to complete at least a high school education and ... discourag[ing] truancy," the ordinance prohibits minors from playing video games on days when school is in session.[1] Mem. op. at 8.
 
 
 4
 Eric Rothner, a distributor and operator of video games in Chicago, alleged "that after the ordinance went into effect, his business rapidly declined because a majority of his patrons are children under the age of seventeen." Id. at 2. Mr. Rothner filed this action in which he contended that the ordinance violated his constitutional rights.
 
 
 5
 Before the City answered the complaint, Mr. Rothner filed a motion in the Circuit Court of Cook County for a temporary restraining order to stay enforcement of the ordinance. The City unsuccessfully opposed the motion. See Rothner v. City of Chicago, 879 F.2d 1402, 1403-04 (7th Cir.1989).
 
 
 6
 The City then filed a petition to remove the case to federal court. Mr. Rothner moved to dismiss the petition and to remand the case to state court on the basis that the City, by opposing the entry of the temporary restraining order, had waived its right to remove. The district court granted Mr. Rothner's motion and remanded the case to state court. This court treated the City's appeal from the remand order as a petition for a writ of mandamus and held that, on that basis, the district court's remand order was reviewable. This court held that the district court erred by concluding that the City had waived its right to remove by opposing the motion for a temporary restraining order. Accordingly, the court granted the writ and directed the district court to entertain the action. Id. at 1418-19.
 
 B. The District Court
 
 7
 The district court first examined whether Mr. Rothner had standing to advocate his customers' first amendment rights under the doctrine of jus tertii. The court reasoned that any injury suffered by Mr. Rothner could prevent the exercise of his customers' constitutional rights. Because his customers' rights were inextricably intertwined with the activity Mr. Rothner wished to pursue, the district court determined that Mr. Rothner had standing to assert his customers' first amendment rights. Mem. op. at 3-4.
 
 
 8
 Despite Mr. Rothner's standing, the district court determined that the ordinance did not implicate constitutionally protected expression. It stated that "[n]othing in the ordinance appears to impact upon speech or incidentally implicate a right of expression." Id. at 5. The court reasoned that the ordinance regulated noncommunicative conduct; video games provided "pure entertainment with virtually no informative value or communication of substantive ideas." Id. The district court recognized that entertainment could receive first amendment protection. However, the court relied on Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952), for the proposition that entertainment must involve the communication of some idea or information before it will be protected. The district court concluded that video games lack this informative element and thus found the first amendment inapplicable. Mem. op. at 5.
 
 
 9
 The district court further held that the restriction on the use of video games did not intrude upon a first amendment freedom of association that protects an individual's freedom to associate for the advancement of ideas and beliefs. The court stated that this protection did not "extend to the gathering of potential customers at an arcade for the sole purpose of amusing themselves."[2] Id. at 6.
 
 
 10
 The district court also examined Mr. Rothner's fourteenth amendment claim. Because Mr. Rothner failed to identify any fundamental right or suspect class affected by the ordinance, the district court noted that Mr. Rothner would be unable to maintain his equal protection claim if the ordinance was related rationally to a legitimate governmental purpose. Id. at 8. The district court found a legitimate purpose in the preamble to the ordinance: to "encourage all minors to complete at least a high school education and to discourage truancy." Furthermore, the court rejected Mr. Rothner's claim that the ordinance was arbitrary and irrational because it applied only to children under seventeen. The court noted that a state law requiring children under the age of sixteen to attend school precluded a finding of arbitrariness. Moreover, the court noted that prohibiting children under the age of seventeen from playing video games during school hours was a reasonable means of discouraging truancy. Id. at 9.
 
 
 11
 Finally, the district court held that the ordinance was not void for vagueness because it was very straightforward and easily understood. The ordinance simply prohibited any minor under seventeen years of age from playing video games during school hours. Id. at 10.
 
 II
 ANALYSIS
 A. Threshold Considerations
 1. Appellate jurisdiction
 
 12
 The City contends that this court is without jurisdiction because the district court dismissed the complaint, not the action in its entirety. We previously have noted that the simple dismissal of a complaint, standing alone, does not terminate the litigation. Benjamin v. United States, 833 F.2d 669, 671 (7th Cir.1987); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1111 (7th Cir.1984), cert. denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). A dismissal of the entire action, however, "ends the litigation and forces the plaintiff to choose between appealing the judgment or moving to reopen the judgment and amend the complaint pursuant to Fed.R.Civ.P. 59 or Rule 60." Benjamin, 833 F.2d at 671 (citing Car Carriers, 745 F.2d at 1111). We have recognized that, under "special circumstances," dismissal of the complaint could constitute finality. Principal Mut. Life Ins. v. Cincinnati TV 64 Ltd., 845 F.2d 674, 676 (7th Cir.1988); Akins v. Board of Governors, 840 F.2d 1371, 1375 n. 2 (7th Cir.1988). This exception applies when "it is 'clear' that the court below found that 'the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make.' " California v. Harvier, 700 F.2d 1217, 1218 (9th Cir.) (quoting Marshall v. Sawyer, 301 F.2d 639, 643 (9th Cir.1962)), cert. denied, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983).
 
 
 13
 At first glance, this case would seem to be governed by our decision in Benjamin. In Benjamin, we considered whether a district court order stating that "Plaintiff take[s] nothing by his Complaint and said Complaint is DISMISSED" constituted a dismissal of the action when the district court used the words "complaint" and "action" interchangeably in its accompanying entry. Benjamin, 833 F.2d at 671. We refused to use the ambiguity in the entry to impeach the explicit language of the judgment. Central to our decision in Benjamin was the fact that it was "not at all 'clear' that the district court had concluded that 'the action could not be saved by an amendment of the complaint....' " Id. at 672 (quoting Marshall v. Sawyer, 301 F.2d 639, 643 (9th Cir.1962)).
 
 
 14
 Despite its superficial similarity to Benjamin,[3] we believe several factors make clear that the policy concerns animating the final judgment rule require a different result in this case. When the court's dismissal is evaluated as a whole, it is clear that the district court intended to dispose of the entire case. By disposing definitively of the constitutional claims of the plaintiff, the district court evidenced an unambiguous intent to render a final judgment. Moreover, the record reflects that, in entering judgment, the court checked the box on the minute order indicating that judgment had in fact been rendered. " 'If it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable.' " Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1514 (9th Cir.1987) (quoting Hoohuli v. Ariyoshi, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984)). Under these circumstances, we must conclude that the district court dismissed the action in its entirety. Therefore, we have jurisdiction to review the district court's determination.
 
 2. Standing
 
 15
 Mr. Rothner alleges that the City ordinance deprives children under seventeen of their first amendment rights. Thus, Mr. Rothner seeks to enforce the rights of third parties. Ordinarily, courts do not permit one party to assert the constitutional rights of another. "Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation." Singleton v. Wulff, 428 U.S. 106, 113, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (plurality opinion). This general prohibition against litigants asserting the rights of others is not a rigid constitutional maxim but a "prudential rule," Warth v. Seldin, 422 U.S. 490, 509, 95 S.Ct. 2197, 2210-11, 45 L.Ed.2d 343 (1975)--a "salutary 'rule of self-restraint' designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative." Craig v. Boren, 429 U.S. 190, 193, 97 S.Ct. 451, 455, 50 L.Ed.2d 397 (1976) (quoting Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953)).
 
 
 16
 In determining when a litigant may, despite the general prohibition, assert the rights of a third party, federal courts consider the practicality of the third party asserting his own rights[4] and "the relationship of the litigant to the right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court can at least be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit." Singleton, 428 U.S. at 114-15, 96 S.Ct. at 2873-74. Consequently, when the interests of the litigant and the third party are closely related, the courts have viewed quite charitably assertions of third-party standing. See, e.g., Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (private and parochial schools permitted to assert rights of parents to send their children to schools when schools themselves had substantial property interests at stake). Under these principles, "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." Craig, 429 U.S. at 195, 97 S.Ct. at 456.[5]
 
 
 17
 Therefore, under the established case law of the Supreme Court, Mr. Rothner appropriately may assert the rights of his customers. As the district court correctly noted, "[t]he application of the law to Rothner necessarily implicates any rights of his patrons; the ability of these persons to exercise fully their purported rights depends on whether Rothner's operations are restricted." Mem op. at 4. Any injury suffered by Mr. Rothner, the proprietor of the shops involved, could prevent his customers from exercising their constitutional rights.
 
 3. Law of the case
 
 18
 Mr. Rothner invites us to revisit our earlier decision in Rothner v. City of Chicago, 879 F.2d 1402 (7th Cir.1989), which held that the district court improperly remanded the case to state court and directed the district court to entertain the action. Because we believe that this matter is governed by the law of the case, we decline Mr. Rothner's invitation. "The law of the case doctrine is not to be lightly disregarded. It is 'based on the salutary and sound public policy that litigation should come to an end.' " Shakman v. Dunne, 829 F.2d 1387, 1393 (7th Cir.1987) (quoting White v. Murtha, 377 F.2d 428, 431 (5th Cir.1967)), cert. denied, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988). "Matters decided on appeal become the law of the case to be followed ... on second appeal, in the appellate court, unless there is plain error of law in the earlier decision."[6] Devines v. Maier, 728 F.2d 876, 880 (7th Cir.1984) (quoting Appleton Elec. Co. v. Graves Truck Line, Inc., 635 F.2d 603, 607 (7th Cir.1980) (quoting Kaku Naguna v. Brownell, 212 F.2d 262, 263 (7th Cir.1954))). This case presents no justification for departing from the law of the case doctrine.B. The Merits
 
 1. Standard of review
 
 19
 The district court dismissed Mr. Rothner's suit for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). We review the grant of a motion to dismiss de novo. Villegas v. Princeton Farms, Inc., 893 F.2d 919, 924 (7th Cir.1990); Corcoran v. Chicago Park Dist., 875 F.2d 609, 611 (7th Cir.1989). It is well settled that, when reviewing the grant of a motion to dismiss, we must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of the plaintiff. See Janowsky v. United States, 913 F.2d 393, 395 (7th Cir.1990); Rogers v. United States, 902 F.2d 1268, 1269 (7th Cir.1990).
 
 
 20
 A complaint should not be dismissed "unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Consequently, both the district court and this court must scrutinize carefully a motion to dismiss for failure to state a claim.[7] When a complaint implicates first amendment values, we must take special care not to terminate the litigation prematurely. See Stewart v. District of Columbia Armory Bd., 863 F.2d 1013, 1017-18 (D.C.Cir.1988) ("where government action is challenged on first amendment grounds, a court should be especially 'unwilling to decide legal questions by the parties without a more thoroughly developed record of proceedings in which the parties have an opportunity to prove those disputed factual assertions upon which they rely' ") (quoting City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 494, 106 S.Ct. 2034, 2037-38, 90 L.Ed.2d 480 (1986)). Moreover, when the factual basis of the litigation is novel and there is a danger that today's holding, if uninformed, might control situations only dimly perceived at present, courts should proceed cautiously when asked to dismiss on the basis of the pleadings. The present Chief Justice's admonition in Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 495, 106 S.Ct. 2034, 2038, 90 L.Ed.2d 480 (1986), while cast in fact-specific terms, is instructive not only for an articulation of the governing principle but also for its tone:
 
 
 21
 We do not think, however, that it is desirable to express any more detailed views on the proper resolution of the First Amendment question raised by respondent's complaint and the City's responses to it without a fuller development of the disputed issues in the case. We think that we may know more than we know now about how the constitutional issues should be resolved when we know more about the present uses of the public utility poles and rights-of-way and how respondent proposes to install and maintain its facilities on them.
 
 2. Application to this case
 
 22
 Mr. Rothner's complaint alleges that the activities banned by the City's ordinance are protected by the first amendment. By granting the City's motion to dismiss, the district court determined that, under no circumstances whatsoever could such activity be deemed protected by the first amendment. We are aware that several district courts, ruling in a variety of factual contexts and upon requests for preliminary injunctions, have held that video games are not protected by the first amendment.[8] However, these cases do not hold that, under all circumstances, all video games can be characterized as completely devoid of any first amendment protection. On the basis of the complaint alone, we cannot tell whether the video games at issue here are simply modern day pinball machines or whether they are more sophisticated presentations involving storyline and plot that convey to the user a significant artistic message protected by the first amendment. Nor is it clear whether these games may be considered works of art. To hold on this record that all video games--no matter what their content--are completely devoid of artistic value would require us to make an assumption entirely unsupported by the record and perhaps totally at odds with reality. As the Supreme Court has confessed its inability to comprehend fully the technology of the cablevision industry on the basis of a complaint, so we must confess an inability to comprehend fully the video game of the 1990s. Indeed, the City frankly cautions us that the issue is "difficult" and reminds us that we need not decide it. We shall heed this caution. The judgment of the district court can be affirmed without our reaching this issue. Appellee's Br. at 8.
 
 
 23
 The City argues that, even if the ordinance regulates first amendment expression, the ordinance is a legitimate time, place, and manner restriction on that expression.[9] We agree. "The government may impose reasonable restrictions on the time, place or manner of protected speech, provided the restrictions are 'justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information.' " Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068-69, 82 L.Ed.2d 221 (1984)).
 
 
 24
 Government regulation of expressive activity is content-neutral so long as it is justified without reference to the content of the regulated speech. Ward, 109 S.Ct. at 2754. Here, the ordinance applies to all video games, irrespective of any message, theme, or plot that may be conveyed by these games. We note that Mr. Rothner does not argue that the ordinance was motivated by an ideological bias on the part of the City to control any expression that may be contained in video games. The purpose of the ordinance clearly is unrelated to the content of any speech: "to encourage all minors to complete at least a high school education and to discourage truancy."
 
 
 25
 The ordinance is also narrowly tailored to serve an important governmental interest. Because it prohibits only persons under seventeen from playing video games during school hours, the ordinance clearly is narrowly tailored to an important governmental interest. Government has few interests more compelling than its interest in insuring that children receive an adequate education. "The 'American people have always regarded education and [the] pursuit of knowledge as matters of supreme importance.' ... [E]ducation provides the basic tools by which individuals might lead economically productive lives to the benefit of us all." Plyler v. Doe, 457 U.S. 202, 221, 102 S.Ct. 2382, 2396-97, 72 L.Ed.2d 786 (1982) (quoting Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923)).
 
 
 26
 Finally, the ordinance leaves open ample "alternative channels" for communication of information. See Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 76, 101 S.Ct. 2176, 2186-87, 68 L.Ed.2d 671 (1981). Persons under seventeen are free to play video games on school vacations, on holidays, and any time after 3:00 p.m. during the school week.[10] The ordinance prohibits the students' contacts with the video games only insofar as such conduct "disrupts ... normal school activities." Grayned v. City of Rockford, 408 U.S. 104, 119, 92 S.Ct. 2294, 2305, 33 L.Ed.2d 222 (1972). Mr. Rothner contests the scope of the ordinance, noting that Illinois requires students to stay in school only until the age of sixteen. Although students can leave school at the age of sixteen, we believe the City's interest in encouraging these students to complete high school is certainly sufficient to justify the ordinance.[11]
 
 
 27
 As Chief Justice Rehnquist has reminded us, when a colorable first amendment claim is at stake, a court " 'may not simply assume that the ordinance will always advance the asserted state interests sufficiently to justify its abridgment of expressive activity.' " Preferred Communications, Inc., 476 U.S. at 496, 106 S.Ct. at 2038 (quoting City Council v. Taxpayers for Vincent, 466 U.S. 789, 803 n. 22, 104 S.Ct. 2118, 2127-28 n. 22, 80 L.Ed.2d 772 (1984)). Nevertheless, in the particular situation before us, we do not believe that precedent requires us to " 'try' the statute" beyond the pleading stage. See United States Postal Service v. Council of Greenbergh Civic Ass'ns, 453 U.S. 114, 117, 101 S.Ct. 2676, 2679, 69 L.Ed.2d 517 (1981). In Council of Greenbergh, the Supreme Court found a good deal of the evidence taken by the district court to be irrelevant because Congress had by statute determined that a letterbox was not a "public forum." Id. at 132, 101 S.Ct. at 2686-87. In this case, children prohibited by the ordinance from operating the video games are required to be in school (or, in the case of seventeen year olds, are encouraged to be there). It is difficult to imagine a more direct correlation between the purpose of the truancy laws and the ordinance under review. Under these circumstances, we believe that this narrowly tailored intrusion (assuming arguendo it is an intrusion) on first amendment freedom ought to be sustained without a further expenditure of judicial resources.
 
 Conclusion
 
 28
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Richard M. Daley is substituted for Eugene Sawyer pursuant to Fed.R.App.P. 43(c)
 
 
 [1]
 The ordinance provides, in pertinent part,
 No person, firm, corporation, organization or other legal entity shall permit, and it shall be unlawful, for, any person under seventeen years of age to operate any automatic amusement device, except upon the premises of city airports, between the hours of 8:00 A.M. and 3:00 P.M. on days in which the city's schools are in session.
 Chicago Municipal Code Sec. 104.2-10 (1988).
 
 
 [2]
 The district court quickly dismissed Mr. Rothner's fourth amendment claim ("nothing in his complaint even remotely resembles a fourth amendment claim"), his fifth amendment claim (fifth amendment applies only to the federal government, not local governments), and his ninth amendment claim (Mr. Rothner neither cited authority for a fundamental right impaired by the city ordinance nor made allegations identifying a right secured by the ninth amendment). Mr. Rothner does not raise any of these issues here
 
 
 [3]
 The district court's judgment order stated, "IT IS ORDERED AND ADJUDGED that plaintiff take nothing and the complaint is dismissed." R.45
 
 
 [4]
 See Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035-36, 97 L.Ed. 1586 (1953)
 
 
 [5]
 See also Eisenstadt v. Baird, 405 U.S. 438, 445-46, 92 S.Ct. 1029, 1034-35, 31 L.Ed.2d 349 (1972) (permitting vendors of contraceptives to assert the constitutional rights of their customers when the challenged statute reduced the availability of contraceptives to customers)
 
 
 [6]
 This court has stated that, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir.1988). We have recognized, however, that the law of the case doctrine is not an immutable concept. This doctrine is subject to two further exceptions: if the evidence in a subsequent trial is substantially different than that adduced at the original trial, or if controlling authority has established a contrary ruling of law. Hamer v. County of Lake, 871 F.2d 58, 60 (7th Cir.), cert. denied, Patner v. County of Lake, --- U.S. ----, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989). Neither of these two exceptions applies in this case
 
 
 [7]
 See Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir.1987), cert. denied, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988); Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir.1981); see also 5A C. Wright & A. Miller, Federal Practice & Procedure, Civil 2d Sec. 1357, at 321 (1990)
 
 
 [8]
 In America's Best Family Showplace Corp. v. City of New York, 536 F.Supp. 170 (E.D.N.Y.1982), the district court examined whether video games could constitute speech protected by the first amendment. In denying the plaintiff's motion for a preliminary injunction from an ordinance regulating video games, the court found that the plaintiff's video games were not a form of speech protected by the first amendment. The court noted that "[w]hether video games are a form of expression protected by the First Amendment and whether the City's regulatory scheme is constitutional are serious questions. Given the plaintiff's unlikelihood of success on the merits, however, I find that these questions are not sufficiently serious to warrant the grant of a preliminary injunction." Id. at 175. Clearly, the court based its decision on the requirement that a plaintiff must show that it will likely prevail on the merits for a court to grant a preliminary injunction. See also Malden Amusement Co. v. City of Malden, 582 F.Supp. 297 (D.Mass.1983) (adopting same analysis used in America's Best )
 
 
 [9]
 Although the City did not raise this argument to the district court, "the prevailing party may, of course, assert in a reviewing court any ground in support of his judgment, whether or not that ground was relied on or even considered by the trial court." Dandridge v. Williams, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970). The City has raised this ground in this court and Mr. Rothner has replied extensively in his reply brief
 
 
 [10]
 Because the ordinance is unambiguous and straightforward, it is not void for vagueness. See Smith v. Goguen, 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 1247 n. 8, 39 L.Ed.2d 605 (1974) (" 'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application' " is void under the due process doctrine of vagueness) (quoting Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). In short, this is an ordinance "written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school." Grayned v. City of Rockford, 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972)
 
 
 [11]
 Thus, we also reject Mr. Rothner's due process claim. As the Supreme Court noted in Metromedia, Inc. v. San Diego, 453 U.S. 490, 521 n. 25, 101 S.Ct. 2882, 2899 n. 25, 69 L.Ed.2d 800 (1981), "the Due Process Clause does not afford a greater degree of protection than does the First Amendment." Because we find that the ordinance passes the scrutiny required by the first amendment, the ordinance does not violate the due process clause. See id. Similarly, Mr. Rothner's equal protection argument need not long detain us. Although the ordinance does not affect other possible causes of truancy, that factor most certainly does not preclude the City from dealing effectively with this cause in a direct yet measured manner