**UROLOGIX, INC., Plaintiff,**

v.

**PROSTALUND AB, Prostalund Operations AB, and Circon Corporation, a/k/a ACMI Corporation, Defendants.**

No. 02–C–0318.

United States District Court, E.D. Wisconsin.

April 7, 2003.

A. Sidney KATZ, Chicago, IL, James Volling, Minneapolis, MN, Robert Briesblatt, Chicago, IL, for Plaintiff.

Kathleen Donius, Milwaukee, WI, Doris Johnson Hines, Washington, DC, Willem Schuurman, Austin, TX, Christopher Banaszak, Milwaukee, WI, Stephen Hash, Austin, TX, for Defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

On October 10, 2002, I granted defendants' motion for summary judgment and held that plaintiff Urologix's U.S. Patent No. 5,234,004 (the "'004 patent") is invalid under 35 U.S.C. § 102(d). *Urologix, Inc. v. Prostalund AB*, 227 F.Supp.2d 1033 (E.D.Wis.2002). Urologix has now filed a motion pursuant to Fed.R.Civ.P. 54(b) requesting that I vacate my prior order.[1]

### I. BACKGROUND

To explain my ruling on Urologix's motion to vacate, I must recount some of the history of the prosecution of the '004 patent. This history appears in more detail in

---

1. Both parties filed additional briefs with motions requesting that I consider them. I have done so and, therefore, will grant the parties' motions. (R. 150, 155.)

2. For an application to receive the benefit of an earlier effective filing date under 35 U.S.C.

my October 10, 2002 decision ("October 2002 decision").

In my October 2002 decision, I found the '004 patent invalid under 35 U.S.C. § 102(d) because the application that matured into the '004 patent, application serial No. 667,847 (the "'847 application"), and its parent application, serial No. 438,741 (the "'741 application"), were not copending. When the '741 application was filed, the applicants claimed a priority filing date under 35 U.S.C. § 120 based on an earlier-filed French application (the "French application"). On November 21, 1990, the United States Patent and Trademark Office ("PTO") issued an Office Action in the '741 application requiring a response from applicants within a three-month period. No response was filed; thus, the '741 application became abandoned.

After abandonment, the applicants filed the '847 application as a continuation-in-part of the '741 application. The '847 application also claimed a priority filing date under 35 U.S.C. § 120 based on the French application. However, because the '741 application was abandoned before the '847 application was filed, copendency between the '741 application and the '847 application did not exist. Hence, priority could not be claimed based on the French application.[2] The French application, therefore, became invalidating prior art under section 102(d).

This issue of copendency was raised in a prior action in this district when the '004 patent was owned by Technomed Medical Systems, Inc. ("Technomed"). *See Technomed Med. Sys., Inc. v. Dornier Med. Sys., Inc.*, No. 98–C–345, slip op. at *2

---

§ 120, it must be "filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application . . . ." *See* 35 U.S.C. § 120.

(E.D.Wis. Jul. 17, 1998) (Clevert, J.) (hereinafter, *"Technomed"*). Technomed was represented by the same attorneys who represent Urologix here. The defendant in that action, Dornier Medical Systems, Inc., argued, among other things, that the '004 patent was invalid due to a failure of copendency and presented evidence on this issue at a preliminary injunction hearing. The court did not decide the patent's validity, but did find in addressing Technomed's motion for a preliminary injunction, that Technomed had a reasonable likelihood of successfully defending against the invalidity charge. *Technomed,* slip op. at 6. Soon after, the case settled.

On March 29, 2002, Urologix filed the instant case against Prostalund AB, Prostalund Operations AB, and Circon Corporation, a/k/a ACMI Corporation (collectively, "Prostalund") for infringement of the '004 patent. As discussed above, Prostalund filed a summary judgment motion arguing invalidity due to a failure of copendency. Urologix argued in response that the '004 patent was valid and that, if it was not, I should allow Urologix to petition the PTO to revive the '741 application so as to fix the failure of copendency. In my October 2002 decision, I found that the patent was invalid and declined to put off my decision to permit Urologix to petition the PTO because I found that "Urologix ha[d] known about the copendency problem since at least 1998 when the issue was raised in [the *Technomed* litigation], yet taken no action to remedy it." *Urologix,* 227 F.Supp.2d at 1041.

After my October 2002 decision issued, Urologix filed a PTO petition to revive the '741 application under 37 C.F.R. § 1.137(b) for the specific purpose of correcting the failure of copendency. (R. 143 Ex. 1.) A patent-holder can petition the PTO to revive an abandoned application and, thereby, correct a failure of copendency. *See* 35 U.S.C. § 41(a)(7). However,

under 37 C.F.R. § 1.137(b), the entire period of delay "from the due date for the reply until the filing of a grantable petition" to revive must be "unintentional" and the petitioner's petition must include a statement to that effect. 37 C.F.R. § 1.137(b)(3). In evaluating these petitions, the PTO "relies upon the applicant's duty of candor and good faith and accepts the statement that 'the entire delay ... was unintentional' without requiring further information in the vast majority of petitions." Manual of Patent Examining Procedure ("MPEP") § 711.03(c)(III)(C) (8th ed.2001).

In its petition, Urologix argued to the PTO that "any abandonment of the '741 application before establishing copendency with the '847 application was unintentional, and therefore within the PTO's discretion to cure." (R. 143 Ex. 1.) In addition, contrary to my October 2002 decision, Urologix stated that "[i]t was not until receipt of the Courts' [sic] October 10, 2002 decision that the need to file this petition was noted." (*Id.*) In a footnote, Urologix mentioned the *Technomed* decision, but said that "[o]n the basis of th[e] decision, there was no need for the Applicants to take any action to address the alleged lack of copendency." (*Id.*) Hence, Urologix maintained before the PTO that the entire period of delay was unintentional because Urologix did not know of the copendency problem until October 2002. (*Id.*)

On November 19, 2002, the PTO granted Urologix's petition to revive. (R. 142 Ex. 2.) The PTO did not address the 1998 *Technomed* decision regarding the lack of copendency or my October 2002 decision, but only discussed the inadvertent failure in 1991 to maintain copendency during prosecution. Armed with this PTO decision, Urologix has returned to me to ask

that I vacate my October 2002 order finding the '004 patent invalid.

## II. STANDARD FOR RECONSIDERATION

■ The orderly administration of litigation requires that the finality of orders, even interlocutory ones, be reasonably certain. *See Gould, Inc. v. United States*, 67 F.3d 925, 930–31 (Fed.Cir.1995); *Mendenhall v. Barber–Greene Co.*, 26 F.3d 1573, 1582 (Fed.Cir.1994); *Rothner v. City of Chicago*, 929 F.2d 297, 301 (7th Cir.1991). Thus, although the court may reconsider its interlocutory orders at "any time before the entry of judgment," Fed.R.Civ.P. 54(b), under the law of the case doctrine, courts generally should not reopen issues once decided, *Agostini v. Felton*, 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("[C]ourts should be loathe to [reconsider their prior decisions] in the absence of extraordinary circumstances."); *Creek v. Vill. of Westhaven*, 144 F.3d 441, 446 (7th Cir.1998). "The law of the case doctrine is not to be lightly disregarded. It is based on the salutary and sound public policy that litigation should come to an end." *Rothner*, 929 F.2d at 301. "An exception exists where the court is 'convinced that its prior decision is clearly erroneous and would work a manifest injustice.'" *Agostini*, 521 U.S. at 236, 117 S.Ct. 1997 (quoting *Arizona v. California*, 460 U.S. 605, 618, n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). However, parties are expected to marshal all their arguments and evidence in opposition to a dispositive motion. *Caisse Natio-*

*nale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir.1996). The court will view "[b]elated factual or legal attacks ... with great suspicion." *Id.*[3]

## III. DISCUSSION

■ As discussed, I ruled on Prosta-Lund's motion for summary judgment and found the '004 patent invalid due to a failure of copendency. This conclusion became the law of the case. Urologix now argues, however, that the later PTO decision corrected the failure of copendency and requires that I vacate my order. I therefore must determine whether the PTO decision makes my October 2002 clearly erroneous and manifestly unjust. I conclude that it does not.

### A. Clearly Erroneous

Clear error is a high standard. The Seventh Circuit has explained that clear error "means more than just maybe or probably wrong; [the error] must ... strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors. Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988); *accord Gindes v. United States*, 740 F.2d 947, 950 (Fed.Cir.1984) ("[A] mere suspicion of error, no matter how well supported, does not warrant reopening an already decided point. Only if we were convinced to a certainty that our prior decision was incorrect would we be warranted in now reexamining it."). Urologix's arguments do not show that my decision meets this standard.

---

**3.** I apply the standard articulated by the Seventh Circuit because the standard is a matter of procedure not within the exclusive jurisdiction of the Federal Circuit. *See Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 768 (Fed. Cir.2002) ("On procedural issues not unique to this court's exclusive jurisdiction, this court

applies the procedural law of the regional circuit."); *Serrano v. Telular*, 111 F.3d 1578, 1582, 1584–85 (Fed.Cir.1997) (applying law of regional circuit in reviewing a motion for reconsideration). However, I also cite Federal Circuit law, as the standards are substantially the same.

Nothing Urologix has presented casts doubt on the correctness of my decision at the time it issued. The PTO decision does not show that my decision was erroneous at the time. To the contrary, the PTO decision indicates that I was correct in my conclusion that there was a failure to co-pendency and that, therefore, the '004 patent was invalid.

Rather, Urologix argues that the PTO decision makes my October 2002 decision clearly erroneous now. However, in order for that to be the case, the PTO's revival of the abandoned application must make the '004 patent retroactively valid, not only for purposes of future litigation, but for the purpose of this litigation initiated before the lapse was cured and in which the patent's invalidity has already been determined.

However, it is not clear that the PTO decision has any effect in ongoing litigation filed before the PTO issued its decision. A certificate of correction issued to remedy a failure of copendency, for example, has no effect in a lawsuit filed before the certificate issued. *See, e.g., Southwest Software, Inc. v. Harlequin Inc.,* 226 F.3d 1280, 1294 (Fed.Cir.2000); *see also Adrain v. Hypertech, Inc.,* No. 2:98–CV–37C, 2001 WL 740542, at *5 (D.Utah Apr. 18, 2001). I can find no case addressing the retroactive effect of revival pursuant to 35 U.S.C. § 41(a)(7), and the parties point to none. *See Suntiger, Inc. v. Telebrands Adver., Inc.,* No. Civ.A.97–423–A, 1997 WL 855581, at *4 (E.D.Va. July 11, 1997) (declining to reach the issue). Indeed, Urologix appears to simply assume that the PTO decision to revive has retroactive effect in ongoing litigation. However, this conclusion is not at all apparent.

Furthermore, even if the PTO decision could effect ongoing litigation, it is not clear that such a decision could ever operate *nunc pro tunc* to undermine the prior decision of a federal court. The Supreme Court has said that "[j]udgments, within the powers vested in courts by the Judiciary Article of the Constitution, may not lawfully be revised, overturned, or refused faith and credit by another Department of Government." *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568 (1948). To be sure, my October 2002 decision did not result in a judgment. Nonetheless, it conclusively resolved an issue that was within my power to resolve. Thus, it is not clear that the PTO decision could have any effect on my decision's validity.

In sum, Urologix has presented no argument that indicates that my October 2002 decision is clearly erroneous. However, even if I were to conclude otherwise, Urologix's motion would fail because I do not find that my decision works a manifest injustice.

## B. Manifestly Unjust

Urologix's present circumstances are the result of the litigation strategy it chose; thus, my decision works no manifest injustice. As I previously determined, Urologix has known, since at least 1998 when the issue was raised in the *Technomed* litigation, that its patent may have failed to satisfy the copendency requirement of the patent statute. *See* 35 U.S.C. § 120. Although Judge Clevert held that Urologix had a reasonable likelihood of successfully defending against the invalidity charge, litigation of the issue put Urologix on notice that copendency might be a problem. After conclusion of the *Technomed* litigation in 1998, however, Urologix chose not to seek a ruling from the PTO regarding the copendency issue. The issue arose again in the present litigation when ProstaLund moved for summary judgment in May 2002. However, rather than asking the PTO to resolve the issue while the motion was pending, Urologix made a decision to

continue to defend the patent's validity. The parties engaged in discovery on the issue, prepared briefs and presented testimony. Then I decided the issue. Only when its strategy resulted in an unfavorable decision did Urologix petition the PTO to cure the problem. Urologix's much-belated attempt to resolve a problem it had known about for at least four years does not make my decision unjust. *See Baumer v. United States*, 685 F.2d 1318, 1321 (11th Cir.1982) (declining to revisit the law of the case where party's litigation strategy led to the challenged result); *see also Caisse Nationale*, 90 F.3d at 1270 (7th Cir.1996) (reaffirming that reconsideration "is not an appropriate forum for ... arguing matters that could have been heard during the pendency of the previous motion"); *Smith Int'l, Inc. v. Hughes Tool Co.*, 759 F.2d 1572, 1578–79 (Fed.Cir.1985) (holding that district court acted properly in declining to consider evidence that could have been presented when issue was originally pending).

In addition, in persuading the PTO to revive the lapsed application, Urologix was less than fully candid. In its petition to the PTO, Urologix presented an incomplete picture of the circumstances surrounding the petition to revive. Urologix averred, as required for revival, that the entire period of delay, from the abandonment until the filing of the petition, was unintentional and that "until this Court issued its October 10[, 2002] Order, Urolo-

gix had every reason to believe that it had a *valid patent.*" (R. 152 at 9.) In addition, to demonstrate to the PTO that the delay had been unintentional, Urologix relied on arguments that I had expressly rejected without indicating that I had done so. Urologix failed to mention that I had determined that it had been aware of the copendency issue since 1998, yet chose not to file a petition to revive. Moreover, merely attaching a copy of my decision containing statements contrary to those in the petition was insufficient because, under the MPEP, Urologix's statements to the PTO were presumed true. *See* MPEP § 711.03(c)(III)(C) (8th ed.2001); *see also id.* § 2001.06(c) (stating that an applicant for patent or reissue is under a duty to bring to the attention of the PTO "any assertion that is made during litigation which is contradictory to assertions made to the examiner."). The PTO's revival of the application based on this incomplete picture of the record does not make my October 2002 decision manifestly unjust. Thus, the law of the case will stand.[4]

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion to vacate the court's decision and order dated October 10, 2002 is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to file a reply brief in support of its motion to vacate is **GRANT-**

---

4. Urologix also has moved this court to vacate its October 16, 2002 Order denying Urologix's motion for preliminary injunction based on alleged infringement of the '004 patent. As I have not disturbed the October 10, 2002 order, I also do not disturb the October 16, 2002 order.

I note that the Federal Circuit in reviewing motions for reconsideration has also stated that revision is appropriate (1) where a change in the controlling law would now require that the court reach a different result and (2) where the moving party presents new

evidence that could not have been presented during the original pendency of the issue. *See Gould*, 67 F.3d at 930; *Smith Int'l*, 759 F.2d at 1578–79. Urologix has not demonstrated that either of these exceptions applies. First, the controlling law has not changed. Second, as discussed above, Urologix could have petitioned the PTO to correct the failure of copendency before I ruled on the motion for invalidity. Thus, the PTO decision does not constitute "new evidence" justifying reconsideration of my decision.

ED and that defendants' motion to file a surreply brief is **GRANTED**.