Steve SHORE, Petitioner–Appellee,

v.

WARDEN, STATEVILLE PRISON, Respondent–Appellant.

No. 90–2653.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1991.

Decided Aug. 30, 1991.

Andrea Lyon (argued), Office of Cook County Defender, Evanston, Ill., for petitioner-appellee.

Neil F. Hartigan, Atty. Gen., Richard S. London, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Terence M. Madsen, Asst. Atty. Gen., Kathryn M. Frost, Office of the Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondent-appellant.

Before MANION and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Petitioner Steve Shore was convicted of the 1982 murder of a security guard in Chicago, Illinois and was sentenced to 35 years imprisonment. His first petition for a writ of habeas corpus under 28 U.S.C. § 2254 was denied. On December 12, 1989, he filed his second petition for a writ of habeas corpus contending that he was entitled to a new trial on the basis of newly discovered evidence in the form of the recanted testimony of one of the state's witnesses, and that the trial court violated his "constitutional" rights when it denied him that relief. Judge Paul Plunkett, the United States District Court for the Northern District of Illinois, denied Shore's first petition, but granted the second. The State of Illinois, on behalf of the Warden of Stateville Prison, appeals, contending that the district court improperly applied the standard of review by which it was bound and improperly substituted its own credibility findings for those of the trial court. We

agree, and accordingly reverse the judgment of the district court.

## PRIOR PROCEEDINGS

### A. *The First Petition For Habeas Corpus*

The underlying facts of this case are set forth in this court's opinion affirming the denial of Shore's first petition for habeas corpus which challenged the credibility of the state's key witnesses, David "Bo" Burns and Chester "Blood" Bland. *See United States ex rel. Shore v. O'Leary,* 833 F.2d 663, 664–65 (7th Cir.1987). In denying that petition, Judge Plunkett acknowledged that had he been the factfinder, he probably would not have found Shore guilty, but noted that he was bound by the general rule in habeas cases which prohibits appellate review of credibility "absent extraordinary circumstances." *United States v. Tanner,* 471 F.2d 128, 135 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *United States v. Noble,* 754 F.2d 1324, 1332 (7th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985). Judge Plunkett concluded that such circumstances were not present in Shore's case; that the trial court's credibility determinations were adequately supported by the record before the state court when viewed in its entirety and in a light most favorable to the state as required under *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); and that Shore's petition for habeas relief should be denied. We affirmed. *United States ex rel. Shore v. O'Leary,* 833 F.2d 663 (7th Cir.1987) ("*Shore I*").

### B. *Shore's Second Petition for Post–Conviction Relief*

When we affirmed the district court's denial of shore's first habeas petition, we did not address in detail the trial testimony of one of the state's witnesses, Myra Sexton. It was unnecessary. Sexton was not an eyewitness to the murder. Her testimo-

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

ny merely corroborated that of the state's key witnesses, Burns and Bland, with regard to an incident which occurred on the day of the murder and placed Shore at the scene several hours before the murder and in possession of a gun.

At trial, Sexton testified that she was in front of her apartment building on Drexel Avenue around 7:00 or 8:00 p.m. with Shore, Burns, Bland, Willie Adams and Andrew "Rab" Shaffer when Shore and Adams got into an argument over a television set. She went up to her apartment during the argument and looked out her window. She saw Shore and Adams walk across the street to the park, talk for a while and then return. After they came back, Adams said something to Shore and the next thing she knew Shore had a gun. Sexton called to Shore and asked him to come upstairs; when he did, she asked him if he wanted "to leave the gun and go cool out." Shore purportedly made no reply, and left. Sexton testified that she did not know what Shore did with the gun, and that after he left her apartment she closed the window and did not see Shore, Burns, Bland or Adams again that night. Burns' and Bland's testimony regarding the argument between Shore and Adams was virtually identical to Sexton's.

On March 17, 1987, Shore filed a Post–Judgment Petition for Relief from Judgment in the state court alleging that Myra Sexton had committed perjury in exchange for money. A fact which, according to the petition, was unknown to Shore's counsel until March 1986 and could not have been discovered before trial. The petition was supported by the affidavit of Mark Rachel in which Rachel attests that Sexton told him she was paid by "some dudes" whom she identified as El Rukns "to lie against Steve in court and to say she had seen him with a gun when she had not." Shore also attached a signed statement by Myra Sexton in which she states that while she did see Shore and Adams arguing about a television set on the day of the shooting, the argument occurred in the morning, and not at night. She also states that before the argument started, Adams handed Shore a gun, that Shore looked at the gun, and

returned it to Adams, and that she and a girlfriend whom she identified only as "Zeke" were with Shore, "Bo," "Blood" and "Rab" in front of her apartment from 3:00 to 7:00 p.m. when the group broke up, and she went inside where she stayed for the rest of the night.

The state court, Judge Heyda, conducted an evidentiary hearing on Shore's motion for post-conviction relief, during the course of which both Rachel and Sexton testified. Sexton initially testified that she did not know Rachel; that she had never been paid to testify against Shore; and that she did not lie under oath at Shore's trial. Her testimony changed, however, after the defense called Rachel to the stand.

Rachel testified that during a conversation with Sexton in June 1986, she mentioned a mutual acquaintance, Robert Lee, and a man identified only as "Steve," and stated that she had been paid by the El Rukns to testify that she had seen "Steve" with a gun on the night the security guard was murdered, when in fact, she had not. According to Rachel's testimony, he saw Robert Lee seven months later and told him what Sexton had said. Lee reportedly told Rachel where to find Shore's attorney, and Rachel then related the conversation to her.

On cross-examination, Rachel stated that he was in custody for residential burglary, and that he had been convicted of possession of controlled substances. He also testified that he had not seen Myra Sexton before that night in June 1986, or after; that he did not know Sexton's last name until he bumped into Lee seven months later; that Myra Sexton never told him Shore's last name; and that he did not know the defendant, Steve Shore.

Following Rachel's testimony, Sexton was recalled to the stand as a hostile witness. After initially pleading the Fifth Amendment, she decided to answer the prosecutor's questions. Sexton stated that the argument she had witnessed between Shore and Adams on August 9, 1982 occurred at 11:30 a.m., not 7:00 p.m.; that while Shore was holding a gun during the

argument, she last saw the gun in Adams' hand; that she never asked Shore for the gun when he came up to talk to her that day; that the last time she saw Shore was about 7:00 p.m. in front of her apartment, when he left on his bike and she went inside where she stayed until the next morning. Sexton reiterated her earlier testimony that she had not been paid for the testimony she gave at Shore's trial.

At the conclusion of the evidence, Judge Heyda denied the motion for new trial, stating that he believed Sexton's original trial testimony and discrediting both Rachel's testimony and Sexton's recantation. (Tr. at 154 and 159).

The Illinois Court of Appeals concurred in those findings and conclusions. It noted, moreover, that the discrepancies between Sexton's testimony at trial and her "recanted testimony" were minor and would not support Shore's claim of perjury. The Illinois Supreme Court denied Shore's motion for leave to appeal.

### C. *The Second Habeas Petition*

▮ Having once again exhausted his state court remedies, Shore filed his second petition for habeas corpus in the district court. The issue raised in Shore's second petition is identical to the one raised in the appeal of his postconviction petition to the Illinois Court of Appeals: whether the trial court properly denied his request for a new trial based on "newly discovered evidence." Shore contended that the state's case against him was weak and that the introduction of Sexton's allegedly perjured testimony should therefore have been sufficient grounds for granting a new trial. He concluded in cursory fashion that the denial of his motion for new trial was "unconstitutional." The only constitutional claim which he raised, however, was a procedural attack on the Illinois Court of Appeals.

Shore alleged that he had been denied a full and fair hearing by the Illinois Court of Appeals when it issued its opinion affirming the denial of post-conviction relief without benefit of the trial transcript, and failed to "inform defense counsel that none of the three justices who reviewed the direct appeal would sit in judgment on this appeal." Shore's due process allegations were not addressed by the district court in granting habeas relief, nor were they repeated on appeal.[1] Shore does not contend that he was denied a full and fair hearing at the trial court level with respect to his second motion for post-conviction relief. Indeed, the record shows that Judge Heyda did, in fact, accord Shore a full and fair evidentiary hearing on his motion for new trial.

Recognizing that Sexton's recantation alone could not be used as a basis for granting habeas relief under *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963), the district court rewrote Shore's arguments in an attempt to state a more viable claim. Judge Plunkett cited *Mastrian v. McManus,* 554 F.2d 813, 822–23 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977), for the proposition that Sexton's recanted testimony "effected" not only her own credibility, but that of Burns and Bland, and opened the door for the court to reconsider its previous denial of habeas relief and our ruling in *Shore I.* In support of that argument, Judge Plunkett put together a "best case scenario" in which he reassembled all of the evidence in a light most favorable to Shore and directed the state to respond to that scenario.

On May 31, 1990, Judge Plunkett granted Shore's petition for a writ of habeas corpus, concluding that Sexton's recanted testimony, whether credible or not, demonstrated that she was an unreliable witness and dealt "the death blow" to the state's

---

1. The reasons appear obvious, the allegations are meritless. Shore cited no authority for the proposition that he was entitled to have the same three judge panel that heard his appeal from the denial of his first motion for post-conviction relief hear his appeal on the second motion. Indeed there is no such authority. To the extent he contends that his due process rights were violated by the appellate court's failure to refer to the trial transcript in summarizing Sexton's trial testimony, we find that the court properly relied on its previous review of the trial transcript in reciting the relevant facts. Shore does not contest the accuracy of those facts. Under the circumstances, we fail to see how Shore's due process rights were violated.

case against Shore. The court concluded that:

> Sexton's recantation, *in addition to all of the other evidence* ... could not reasonably be found to be proof of guilt beyond a reasonable doubt under *Jackson.*

We disagree.

## ANALYSIS

■ On appeal, we are bound, as was the district court, by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We must view all of the evidence in the light most favorable to the state, and determine whether, viewing the record as a whole, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. While Judge Plunkett identifies *Jackson v. Virginia* as the controlling standard, his adaptation of a "best case scenario" favoring Shore suggests otherwise.

■ In granting Shore's second petition for a writ of habeas corpus, the district court erred in several respects: most notably in applying *Mastrian* to the facts in this case. In this circuit the introduction of perjured testimony, without more, does not rise to the level of a constitutional violation warranting federal habeas relief. *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 674 (7th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States ex rel. Williams v. Walker*, 535 F.2d 383, 386–87 and n. 3 (7th Cir.1976); *United States v. Jakalski*, 237 F.2d 503, 504–05 (7th Cir.1956), *cert. denied*, 353 U.S. 939, 77 S.Ct. 817, 1 L.Ed.2d 761 (1957). "It is the knowing and intentional use of such

testimony by the prosecuting authorities that is a denial of due process of law." *Jakalski*, 237 F.2d at 504–05. Shore does not contend, nor does the record show, that the state knowingly or intentionally used perjured testimony in obtaining his conviction.

The Second and Eighth Circuits have expanded the definition of state action to include a state's failure to grant relief from a conviction where there has been a credible recantation by a material witness, *see Sanders v. Sullivan*, 863 F.2d 218, 225–26 (2d Cir.1988) and *Mastrian*, 554 F.2d at 822–23, and hold that such evidence may be grounds for habeas relief if it would "probably produce an acquittal on retrial." *Sanders*, 863 F.2d at 222; *Mastrian*, 554 F.2d at 822–23. Their standard in a habeas case is thus no different from that employed on appeal from a district court's denial of a motion for new trial under Fed. R.Crim.P. 33.[2]

We have yet to affirmatively adopt the *Sanders* and *Mastrian* rule as the law in this circuit, and find no reason to do so in the present case. Both are factually distinguishable: neither case involved a successive petition. A significant fact which both Shore and the district court overlooked.

This is Shore's second petition for habeas relief, not his first. As the district court correctly pointed out in its order of May 31, 1990, Shore's first petition rested almost entirely upon an attack on the credibility of two of the eye-witnesses to the murder, Burns and Bland. His second petition attacks those same credibility determinations, and is, in effect, a motion to reconsider previous adverse determinations in *Shore I*.[3]

---

2. Under Fed.R.Crim.P. 33, a defendant need not show a violation of his constitutional rights to obtain relief, as he must in a habeas proceeding. *United States ex rel. Williams v. Walker*, 535 F.2d 383, 387 (7th Cir.1976); *see also Burks v. Egeler*, 512 F.2d 221, 226 (6th Cir.1975) ("In contrast to direct appellate review of cases originally tried in a federal court, where non-constitutional error can be and is often corrected, habeas corpus relief can only be afforded where the error claimed to have been committed in the state court system is one of federal constitutional dimensions."). The approach taken by the

Second and Eighth Circuits obscures the distinction.

3. In affirming the denial of habeas relief in *Shore I*, we concluded that:

> After reviewing the entire record, we must agree with the district court that the trial court's assessment of witness credibility was not irrational. The province of credibility determination is reserved for the trial court; its factfinding determination is entitled to a presumption of correctness. *Sumner v. Mata*,

■ Unlike *res judicata*, the law of the case doctrine is applicable to habeas proceedings, *Weidner v. Thieret*, 932 F.2d 626, 629 (7th Cir.1991); and while it is discretionary, it "should not be lightly disregarded." *Indianapolis Power & Light v. NLRB*, 898 F.2d 524, 528 (7th Cir.1990) (quoting *Shakman v. Dunne*, 829 F.2d 1387, 1392 (7th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988)). *Shore I* established the law of the case, and "is binding on a district judge asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986). *See also Indianapolis Power & Light Co.*, 898 F.2d at 528; *Evans v. City of Chicago*, 873 F.2d 1007, 1013–14 (7th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990); *Kaku Nagano v. Brownell*, 212 F.2d 262, 263 (7th Cir.1954). We are similarly bound on a subsequent appeal. *Mazak*, 789 F.2d at 581.

■ The burden was on Shore, as a petitioner seeking reconsideration, to show that, although the grounds stated in the new petition were determined against him on the merits on a prior application, his second petition falls within one of the three recognized exceptions to the law of the case doctrine, *Weidner*, 932 F.2d at 629; *Indianapolis Power & Light Co.*, 898 F.2d at 528–29, or that the "ends of justice" would be served by a redetermination of those grounds. *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963).

■ To warrant reconsideration under the law of the case doctrine, the applicant must show that:

[1] the evidence in a subsequent trial was *substantially* different; [2] controlling authority has since made a contrary decision of law applicable to such issues; or [3] the decision was clearly erroneous, and would work a substantial injustice.

(Emphasis added). *Indianapolis Power & Light Co.*, 898 F.2d at 529 (quoting *Kori*

449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981).

*Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed.Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985)). The "ends of justice" test discussed in *Sanders* incorporates virtually identical language. *See Mazak*, 789 F.2d at 581 ("discussion [in *Sanders*] of circumstances under which a district court may refuse to entertain a successive motion under § 2255 seems consistent with the application of the [law of the case] doctrine."). While *Sanders* gives no finite description of when the "ends of justice" would be served by reconsidering previously rejected grounds for habeas relief, it does give two examples.

If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair [*see Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)].... If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application.

*Sanders*, 373 U.S. at 16–17, 83 S.Ct. at 1078. *See also Sulie v. Duckworth*, 864 F.2d 1348, 1353 (7th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989) ("ends of justice" openly defined "to allow district courts to exercise their discretion in considering successive petitions for habeas relief").

Shore made no attempt to satisfy his burden under *Sanders*, or to demonstrate that any exception to the law of the case doctrine was warranted. The district court did not address the issue.

■ The only exception to the law of the case doctrine which arguably applies in Shore's case is the newly discovered evidence exception which we addressed in *Weidner*.

[F]or an appellate court to reconsider its past decision, the evidence on remand must not only be different from the evi-

833 F.2d at 667.

1124

dence presented in the initial trial, but *so different and so central to the decision of the case as to leave the second appellate panel with "substantial doubt as to the correctness" of the prior decision.* Weidner, 932 F.2d at 630 (quoting *Evans v. City of Chicago,* 873 F.2d at 1014). Even if we assume that Sexton's partial recantation was credible, it was neither "substantially different" from her trial testimony, nor "central to the decision of the case." Only a small portion of Sexton's trial testimony was actually recanted. Sexton was not an eyewitness to the murder. Her testimony was merely corroborative of events which occurred several hours before the murder.[4]

 Shore fares no better even if we were to apply the *Mastrian* standard. *Mastrian* employs the same standard as that employed in a direct appeal from the denial of a motion for new trial under Fed. R.Crim.P. 33. In order to obtain a new trial under Rule 33 on the basis of newly discovered evidence, a defendant must show that the evidence in question:

1) came to the defendant's knowledge only after trial; 2) could not have been discovered sooner through the exercise of due diligence; 3) is material, and not merely impeaching or cumulative; and 4) would probably lead to an acquittal in the event of a new trial.

*United States v. Leibowitz,* 857 F.2d 373, 380 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989) (quoting *United States v. Goodwin,* 770 F.2d 631, 639 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986)). Sexton's recantation fails to satisfy these requirements. Indeed, it is neither "newly discovered,"[5] nor material.[6] At most it is impeaching, and does nothing more than create another credibility determination which could reasonably be resolved against Shore at a new trial.

### CONCLUSION

In granting Shore's second petition for a writ of habeas corpus, the district court disregarded the standard by which it was bound, ignored existing precedent in this circuit without reasonable justification, and abused the discretion accorded it under *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) and *Weidner v. Thieret,* 932 F.2d 626, 629 (7th Cir.1991). Accordingly, we now RE-VERSE the judgment of the district court granting Shore a writ of habeas corpus.

4. We agree with Judge Plunkett's conclusions in his memorandum opinion and order of July 11, 1986, denying Shore's motion to reconsider the denial of his first habeas petition: "arguments regarding the motives and inconsistent testimony of the State's witnesses are misplaced before a reviewing court unless it can be said from reading the cold record with every inference in favor of the State that no rational person could believe those witnesses' eyewitness accounts of *just one essential fact—Petitioner's act of shooting Garrison Hester.*" (Emphasis added). Sexton's questionable recantation does not provide a basis for this court to discredit as a matter of law that portion of those witnesses' testimony.

5. In *Shore I,* we defined "newly discovered evidence" as that which *"the petitioner* reasonably either did not know about ... or could not have presented ... at an earlier proceeding." *United States ex rel. Shore v. O'Leary,* 833 F.2d 663, 669 (7th Cir.1987). In his petition Shore alleges only that his counsel was unaware of the "new"

evidence at the time of trial. What his counsel knew or did not know is not relevant. Shore, Adams, Shaffer, and Sexton's girlfriend "Zeke" knew whether Sexton was lying during his trial. Shore had adequate opportunity to cross-examine Sexton, Burns and Bland at trial, and impeach their testimony, and he availed himself of that opportunity. He also had the opportunity to call witnesses in his own defense to impeach their testimony.

6. Even under *Sanders* and *Mastrian,* the introduction of perjured testimony does not rise to the level of a constitutional violation unless it is "material" and "of an extraordinary nature," *Sanders,* 863 F.2d at 226; *Mastrian,* 554 F.2d at 822–23. *See also Durley v. Mayo,* 351 U.S. 277, 290–91, 76 S.Ct. 806, 813–14, 100 L.Ed. 1178 (1956) (J. Douglas, dissenting) ("state's failure to act to cure a conviction founded on a credible recantation *by an important and principal witness,* exhibits sufficient state action to constitute a due process violation") (emphasis added).