UNITED STATES, Appellee

v.

Christopher J. MATTHEWS, Specialist
U.S. Army, Appellant

No. 08-0613

Crim. App. No. 20030404

United States Court of Appeals for the Armed Forces

Argued April 14, 2009

Decided July 23, 2009

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel

For Appellant:  Earle Partington, Esq. (argued); Captain Melissa
Goforth Koenig (on brief); Major Bradley M. Voorhees, Captain
Teresa Lynn Raymond, and Captain William Jeremy Stephens.

For Appellee:  Captain Elizabeth A. Walker (argued); Colonel
Denise R. Lind, Lieutenant Colonel Francis C. Kiley, and Major
Christopher B. Burgess (on brief); Major Larry W. Downend.


Military Judge:  Theodore E. Dixon


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Matthews, No. 08-0613/AR

Judge BAKER delivered the opinion of the Court.

Appellant entered mixed pleas before a military judge sitting alone as a general court-martial. He was convicted of one specification of assault upon a noncommissioned officer with intent to cause grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2000), and two specifications of wrongfully using cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (2000). The military judge adjudged, and the convening authority approved, a sentence consisting of a bad-conduct discharge, confinement for eleven months, reduction to the grade of E-1, and forfeiture of all pay and allowances. On initial review, the United States Army Court of Criminal Appeals (CCA) ordered an evidentiary hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967) (DuBay hearing). United States v. Matthews, No. ARMY 20030404, slip op. at 6-7 (A. Ct. Crim. App. July 14, 2006) (Matthews Order). Following the DuBay hearing, the CCA affirmed the findings and sentence. United States v. Matthews, 66 M.J. 645, 653 (A. Ct. Crim. App. 2008).

The issue granted asks:

> WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL
> APPEALS ERRED IN HOLDING THAT MIL. R. EVID. 509 DOES
> NOT BAR THE GOVERNMENT FROM CALLING THE MILITARY JUDGE
> FROM A JUDGE-ALONE TRIAL TO TESTIFY AT A DUBAY HEARING
> AS TO HIS DELIBERATIVE PROCESS.

2

The issue implicates not only the meaning of Military Rule of Evidence (M.R.E.) 509, but also the broader question of when, if at all, it is appropriate for military judges to testify regarding their deliberations.  After a review of M.R.E. 509, and consistent with M.R.E. 101 and federal common law, we conclude that with limited exception, not applicable here, the deliberative processes and reasoning of courts-martial military judges are protected from post-trial inquiry.  The CCA therefore should not have considered the trial military judge's DuBay hearing testimony in this case to the extent it revealed his deliberative process.  We remand this case to the CCA for reconsideration of the DuBay record in a manner consistent with this opinion.

BACKGROUND

The charges against Appellant originate from events that transpired at Appellant's on-post home, where he lived with his wife.  On the day in question, Sergeant (SGT) Brian Freeman, an acquaintance of Appellant and Mrs. Matthews, visited the Matthews' home.  Mrs. Matthews informed SGT Freeman that Appellant wished to speak with SGT Freeman inside the house.

Upon entering the house, SGT Freeman noticed there were two other men in the kitchen; both were wearing battle dress uniforms without name tags. Although he did not know their identities at the time, they were [then] [Staff Sergeant] SSG James Gibson and Private First Class (PFC) Pedro Lozada III.  Appellant began questioning SGT Freeman in the living room about

3

> whether SGT Freeman was facilitating [Appellant's wife's] affair with another soldier. . . . [SGT] Freeman denied knowledge of an affair.
>
> Appellant then pulled out a handgun from under the couch in the living room and inserted a loaded magazine. As SGT Freeman became frightened and turned to run through the kitchen, SSG Gibson and PFC Lozada grabbed SGT Freeman and pushed him back into the living room. Appellant then pistol whipped SGT Freeman from behind, and SGT Freeman heard what he believed to be a gunshot. Two of [A]ppellant's neighbors also heard a gunshot. . . . While SGT Freeman was on the floor with his head bleeding, [A]ppellant held the handgun to his head. With PFC Lozada and SSG Gibson beside him, [A]ppellant continued to threaten SGT Freeman and demanded he tell him what he knew of [his wife's] infidelities. Hearing the sirens of approaching military police (MP), [A]ppellant told SGT Freeman to hide in the bathroom. [SGT] Freeman did so for a few moments but fled the house at the first opportunity.

Matthews, 66 M.J. at 646 (footnote omitted and first alteration in original).

I. Trial

At trial, Appellant called PVT Gibson as a witness.[1] As the CCA explained, PVT Gibson's invocation of his right against self-incrimination in response to questions by trial counsel at the court-martial formed the basis for Appellant's appeal to the lower court:

> During cross-examination, trial counsel asked PVT Gibson a series of questions, which could have elicited potentially inculpatory and self-

---

[1] "Private James Gibson was a staff sergeant (SSG) at the time the offenses were committed. Following UCMJ action prior to [A]ppellant's trial, [Gibson] was reduced in rank from staff sergeant to private." Matthews, 66 M.J. at 646 n.1.

> incriminating responses.  The questions pertained to
> PVT Gibson's previous misconduct [and] were unrelated
> to the offenses underlying [A]ppellant's trial.  [PVT]
> Gibson refused to answer these questions and invoked
> his Fifth Amendment privilege against self-
> incrimination thirteen times by stating, "I'll take
> the Fifth Amendment."
>
> Based upon PVT Gibson's invocation, trial counsel
> requested to have him excused and his testimony
> stricken from the record.  Although trial counsel
> asserted that she could not conduct a meaningful
> cross-examination of PVT Gibson, the military judge
> summarily denied the request.  Despite PVT Gibson's
> repeated invocation of his Fifth Amendment privilege
> -- matched by as many objections from civilian defense
> counsel -- the military judge allowed trial counsel to
> continue with her line of questioning.
>
> The military judge also permitted trial counsel
> to comment on PVT Gibson's invocation of his Fifth
> Amendment privilege against self-incrimination during
> her rebuttal argument on findings.
>
> . . . .
>
> Although civilian defense counsel objected to
> trial counsel's comments, the military judge
> subsequently ruled that such comments were permissible
> based on the "interests of justice" exception to Mil.
> R. Evid. 512(a)(2).

Matthews, 66 M.J. at 647 (footnote omitted).

After the military judge announced his findings on the

record, he made the following additional comments:

> MJ:  For purposes of any appellate review of this
> case for factual sufficiency, the court had the
> opportunity to evaluate the credibility of each
> witness and considered each witness's ability to
> observe and accurately remember, sincerity,
> conduct in court, friendships, prejudices, and
> character for truthfulness.  The court also
> considered the extent to which each witness was
> supported or contradicted by other evidence, the

> relationship each witness had with the other side, and how each witness might be affected by the verdict.
>
> In weighing a discrepancy by a witness and between witnesses, the court considered whether it resulted from an innocent mistake or a deliberate lie.
>
> After taking all these matters into account, the court then considered the probability of each witness's testimony, and the inclination of each witness to tell the truth. Based on the foregoing, the court finds beyond a reasonable doubt that [PVT] Lozada, [PVT] Gibson, and Mrs. Matthews were untruthful in their testimony. The court further finds that these witnesses had every opportunity to, and did, collaborate to falsely testify in this case, motivated by obvious individual self-interest.

Id. at 647-48.

## II. United States Army Court of Criminal Appeals Order

Appellant thereafter appealed to the CCA, asserting that "the military judge erred by allowing trial counsel to comment upon PVT Gibson's invocation of the right against self-incrimination, and therefore, improperly drew an adverse inference from those comments." Matthews Order, No. ARMY 20030404, slip op. at 3. In addition, Appellant submitted affidavits from civilian defense counsel, trial defense counsel, and Appellant's father, each asserting that the military judge stated reasons off the record for why he did not believe PVT Gibson. Id. The Government countered by submitting an affidavit from trial counsel, who asserted that the military

6

judge "'never made the comments that [A]ppellant alleges.'"  Id. at 4.

On July 14, 2006, the CCA ordered a DuBay hearing to determine, in relevant part:

> a.  Whether the military judge properly applied Mil. R. Evid. 512(a)(2) by allowing trial counsel to comment on PVT Gibson's invocation of the right against self-incrimination in her rebuttal argument on findings.
>
> b.  What, if anything, did the military judge say concerning PVT Gibson's credibility in light of PVT Gibson invoking the Fifth Amendment right against self-incrimination?

Id. at 6.  The CCA also ordered:

> 3.  That the DuBay military judge . . . permit the presentation of witnesses and evidence, make rulings as appropriate, and enter findings of fact and conclusions of law concerning whether the military judge:  (1) made any comment regarding PVT Gibson's invocation of his Fifth Amendment right against self-incrimination, and/or (2) drew any adverse inference that the invocation made PVT Gibson less credible[.]

Id. at 7.

III.  DuBay Hearing

The Government called the military judge who presided over the original court-martial to testify at the DuBay hearing. Neither party nor the DuBay judge nor the trial judge objected to this testimony.  Both parties and the DuBay judge posed questions to the trial judge.  The following excerpts are

representative portions of the trial judge's testimony at the

DuBay hearing:[2]

> [Trial counsel (TC)]:  Now how would you characterize
> the interests of justice here?
>
> [Trial military judge (TMJ)]:  . . . I was very
> concerned about the potential prejudice to Matthews if
> I were to make rulings different than what I had made.
> I wanted the defense to be able to present their case
> in whatever fashion they believed that they should
> present their case.  However, I am a firm believer
> that justice works both ways.  The government is
> entitled to a fair trial as well as the accused.
> Under these conditions, with the sequence of events,
> the government was entitled to make that legal
> argument . . . . I decided that she was entitled,
> [trial counsel] that is, to make that argument,
> whether I drew the inference or not, it was an
> arguable inference that the court was permitted to
> draw.
>
> . . . .
>
> [TC]:  So you didn't state at that time, that you
> would draw a negative inference?
>
> [TMJ]:  Although I believe then, and I believe now,
> that the inference could be drawn by the court under
> these circumstances, I didn't make any comment that I
> was going to draw an inference.  That is something
> that judges just don't do.  So I would not have told
> them that I am actually going to draw the inference.
> That was before findings had been announced.
>
> . . . .
>
> [Defense counsel (DC)]:  And with knowing that there
> were some credibility issues related to Private

---

[2] The excerpts from the trial military judge's DuBay testimony
and the DuBay military judge's findings of fact and conclusions
of law cited in the Court's opinion are illustrative of the type
of testimony elicited and the effect such testimony had on the
DuBay military judge's findings of fact and conclusions of law.
They are not exhaustive.

Gibson, did that in any way impact how you believed
his credibility was when he got on the stand?

[TMJ]:  No.  His testimony, as I stated earlier, was
in direct opposition to other testimony, other
evidence presented to me.  It was so far in contrast,
that I didn't believe him during his direct
examination.  In other words, what he testified to,
that was being elicited by the defense, was not
credible in and of itself.

. . . .

[DuBay military judge]:  Okay.  So by invoking the
exception of M.R.E. 512 in the interest of justice,
how would you describe the interest of justice that
you were seeking to pursue?

[TMJ]:  Because all of my rulings and all of my
decisions as it related to how to proceed with
[Private] Gibson's testimony, in light of what had
occurred, were very defense oriented, very defense
favorable, I wanted to ensure that Specialist Matthews
was able to present the evidence as his attorneys
wanted to present [it].  So, I made my rulings
consistent with that approach to this particular
issue.  All of those rulings were designed to allow
[Private] Gibson's direct examination.  Because I
didn't want to delay the trial for an immunity order.
I didn't want to give the government the advantage of
me ordering [Private] Gibson to testify,
notwithstanding the fact that he invoked, which, to be
quite honest, I had not researched that aspect of the
issue and neither side had briefed the issue of
whether a court-ordered response by the witness would
provide in any type of immunity.  So I elected not to
use that option as well.  So, all of the options that
I chose, either to elect or not elect, were designed
to ensure that Specialist Matthews was able to present
the evidence that he wanted to present.  When it came
to the argument of counsel, however, that is where I
evened the playing field, so to speak.  It was a
legitimate, in my mind, a legitimate legal argument
that she should have been able to make, whether or not
the court could draw the inference or whether the law
would allow them to draw the inference, it was a
comment which the rules specifically address, that I

9

believe that the interest of justice, under the circumstances, would allow. It has sort of evened the playing field based on the circumstances in this case, so.

. . . .

[DC]: Sir, do you think that the government was allowed to unfairly benefit from a poorly drafted immunity order, by asking questions that they know would not be covered by that immunity order?

[TMJ]: I believe the government's presentation of their cross-examination of Gibson was severely hampered, because they were not permitted to get responses that would otherwise directly go to [Private] Gibson's credibility. That was the result of the poorly drafted immunity order. As this was a judge alone case, there was no specific danger of unfair prejudice to the accused of the government's rebuttal argument. Since I did not draw the inference requested, there was no prejudice to the accused, Specialist Matthews, as it relates to that argument. So, did the government unfairly benefit? No. The end result is that they did not unfairly benefit by my rulings.

Based on the testimony presented at the DuBay hearing, the DuBay military judge made the following findings of fact:

18. At the fact-finding hearing, the Military Judge for the first time explained his rationale for invoking MRE 512's interest-of-justice exception. His intent was to ensure a fair trial for both sides. He was primarily concerned that appellant not be deprived of the benefit of Private Gibson's material, favorable evidence because government attorneys had drafted an in-artful grant of immunity for Private Gibson and had not co-ordinated that grant of immunity with the U.S. Attorney prior to trial. Accordingly, he decided not to invoke the remedy of striking Private Gibson's direct testimony, favorable to appellant, upon invocation of the privilege upon trial counsel cross-examination because he did not want the government to benefit from its own errors. Because he had not invoked the remedy of striking the direct testimony,

he allowed assistant trial counsel to argue the invocation of the privilege in the interest of justice. It was a lesser remedy than striking the direct testimony, thereby ensuring both that appellant received the benefit of Private Gibson's testimony and that the government had an opportunity to be heard as well regarding the matter of credibility. In his determination that the interests of justice indicated consideration of assistant trial counsel's argument regarding Private Gibson's invocation of his privilege, the Military Judge was aware that the privilege invocation deprived the government of significant impeachment evidence regarding Private Gibson's credibility.

19. When rendering findings, the Military Judge specifically found that Private Lozada, Private Gibson, and Mrs. Matthews were untruthful in their testimony and that they had collaborated in their false testimony. He determined this from the sharp contrast in the testimony between government witnesses whom [sic] he determined were credible and these defense witnesses, and the way in which these defense witnesses testified consistent with each other regarding significant matters but differed as to less significant matters. . . . The Military Judge had determined the credibility of these three defense witnesses prior to assistant trial counsel's cross-examination of Private Gibson and prior to assistant trial counsel's comment in rebuttal on Private Gibson's invocation of his privilege.

20. When rendering findings, the Military Judge considered the assistant trial counsel's rebuttal argument to which civilian defense counsel objected regarding Private Gibson's invocation of his privilege. He thought about it while deliberating on findings. He considered Private Gibson's invocation of the privilege as a matter affecting Private Gibson's credibility. He drew an adverse inference that the invocation made Private Gibson less credible. He considered the invocation of the privilege as a matter affecting Private Gibson's credibility in the interest of justice as an alternative to the more drastic, authorized remedy of striking and not considering at all Private Gibson's defense-favorable, material direct testimony. He, however, gave the

invocation of the privilege no weight because other evidence persuaded him that Private Gibson, as well as Private Lozada and Mrs. Matthews, had collaborated their false testimony.

The DuBay military judge then made the following relevant conclusions of law based on his findings of fact:

1.   The Military Judge did not abuse his discretion by allowing assistant trial counsel to comment on Private Gibson's invocation of the privilege against self-incrimination in her rebuttal argument on findings. Rather, the Military Judge applied the correct rule of evidence, MRE 512(a)(2).  That rule provides that normally comment on claim of a privilege [sic] is not allowed, but here the Military Judge determined that the circumstances were not normal.  He considered the government's error in the in-artful drafting of Private Gibson's grant of immunity, as well as the lack of co-ordination with the U.S. attorney.  His primary concern was not to invoke the remedy of MRE 301(f)(2) and deprive appellant of material, favorable evidence by striking Private Gibson's direct testimony.  Rather than strike the direct testimony, he invoked a less drastic remedy of allowing assistant trial counsel to comment on the claim of privilege and considered it in rendering findings, in order to ensure that he considered Private Gibson's testimony offered by appellant, as well as to ensure that the government had an opportunity to be heard, cognizant that Private Gibson's privilege invocation deprived the government of significant impeachment evidence. Therefore, he did not abuse his discretion by invoking the Rule's interest-of-justice exception and did not improperly apply the rule of evidence.  He applied the correct rule and had an adequate factual basis for his application of that rule's exception.

. . . .

3.   The Military Judge considered assistant trial counsel's argument regarding Private Gibson's invocation of the privilege; considered the invocation of the privilege when rendering findings; drew an adverse inference that the invocation made Private Gibson less credible; told the parties on the record

12

that he had invoked MRE 512's interest-of-justice exception when considering the invocation of the privilege when rendering findings; and, made an <u>ex parte</u> off-the-record comment to civilian defense counsel and military defense counsel that he had considered Private Gibson's invocation of the privilege in determining Private Gibson's credibility.

4.  The Military Judge gave no weight to Private Gibson's invocation of the privilege in determining Private Gibson's credibility and rendering findings. . . .

IV.  <u>United States Army Court of Criminal Appeals Opinion on the Merits</u>

Following the <u>DuBay</u> hearing, Appellant submitted a supplemental brief to the CCA alleging that the <u>DuBay</u> military judge erred, first, in permitting the trial military judge to testify about his deliberative process, and second, in finding that the trial military judge properly permitted assistant trial counsel to comment on PVT Gibson's invocation of his privilege against self-incrimination.  With the benefit of the record and the <u>DuBay</u> hearing, the CCA ultimately found that:

> the military judge erred when applying Mil. R. Evid. 512, rather than the more specific and therefore controlling rule, Mil. R. Evid. 301.  Consequently, he erred when he permitted trial counsel to comment during rebuttal argument on PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination.  Lastly, the military judge erred when he ruled on defense counsel's objection to the military judge drawing an adverse inference from PVT Gibson's invocation of his Fifth Amendment privilege against self-incrimination.

Matthews, 66 M.J. at 651-53. The CCA then applied a constitutional error analysis to determine that the trial military judge's errors were harmless beyond a reasonable doubt. Id. at 653. In conducting this analysis, the CCA observed that "the [trial] military judge testified [at the DuBay hearing] concerning his analysis of PVT Gibson's credibility as a witness." Id. at 652. The CCA further noted that "[w]hile the [trial] military judge acknowledged he drew an adverse inference, he reiterated that he gave no weight to this inference in his deliberations." Id.

The CCA addressed Appellant's allegation that the DuBay military judge erred in permitting the trial military judge to testify about his deliberative process at the DuBay hearing in the following footnote:

> Appellate defense counsel, in supplemental pleadings, assert[s] the military judge violated the deliberative process privilege, as explained in Mil. R. Evid. 509 and Mil. R. Evid. 606(b), by testifying about his thought process in ruling on the Mil. R. Evid. 512 objection. Military Rules of Evidence 509 and 606(b) describe the prohibitions which exist to keep jury members from disclosing their deliberative process, through testimony or affidavits, not judges. Appellant provides no case law to support the proposition that these evidentiary rules apply to a military judge's deliberative process. In fact, in United States v. McNutt, 62 M.J. 16, 20 (C.A.A.F. 2005), our superior court held Mil. R. Evid. 606(b) "applies to court members only, and thus, does not apply to protect the statement[s] of the military judge. . . ." Additionally, the court specifically addressed the present situation, recognizing "there [will be] certain extraordinary situations in which a

> judge may be called upon to explain his verdict or
> rulings in subsequent proceedings." Id. at 21. In
> the instant case, such a circumstance arose and,
> acting under this contingency, we ordered the DuBay
> hearing.

Matthews, 66 M.J. at 652 n.13 (alteration in original).

ANALYSIS

We review the CCA's conclusion that M.R.E. 509 is

inapplicable to military judges de novo. See United States v.

Flores, 64 M.J. 451, 454 (C.A.A.F. 2007); United States v. Best,

61 M.J. 376, 381 (C.A.A.F. 2005); United States v. McCollum, 58

M.J. 323, 340 (C.A.A.F. 2003).[3] In addressing the granted issue,

we look first to the text of M.R.E. 509, and in particular, the

use of the terms "courts" and "privilege." In light of M.R.E.

509's incorporation of federal evidentiary law, as well as the

varied ways in which the term "privilege" might be read, we

ultimately turn to federal common law, consistent with M.R.E.

101, to answer the question presented. Indeed, for the reasons

---

[3] This case presents a situation similar to that in Best, 61 M.J.
376. In that case, the lower court affirmed the findings and
sentence after considering the findings of a DuBay hearing. Id.
at 377. We then reviewed de novo the lower court's post-DuBay
interpretation of R.C.M. 706. Id. at 381. As in Best, plain
error analysis is inapplicable to what the DuBay military judge
may or may not have considered in this case, notwithstanding
that neither party objected to the trial military judge's DuBay
testimony. The third prong of the test for plain error focuses
on the outcome or judgment at the court-martial. See United
States v. Schlamer, 52 M.J. 80, 85-86 (C.A.A.F. 1999).
Moreover, as a DuBay hearing has no outcome per se, we review
the CCA's conclusion on a question of law de novo and remand to
the lower court for reconsideration of the evidentiary issues
that might have affected its ultimate appellate decision.

15

explained below, it would not be possible to interpret M.R.E. 509 without reliance on federal common law and its purposes.

I.  Applicability of M.R.E. 509 to Military Judges

M.R.E. 509 is included in the "Privileges" section of the Military Rules of Evidence and is entitled "Deliberations of courts and juries."  M.R.E. 509 provides that:

> Except as provided in Mil. R. Evid. 606, the deliberations of courts and grand and petit juries are privileged to the extent that such matters are privileged in trial of criminal cases in the United States district courts, but the results of the deliberations are not privileged.

M.R.E. 509 "is taken from 1969 Manual Para. 151 but has been modified to ensure conformity with Rule 606(b) which deals specifically with disclosure of deliberations in certain cases." Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-44 (2008 ed.) (MCM).

Paragraph 151(b) of both the 1951 and 1969 MCM provided that "[t]he deliberations of courts and of grand or petit juries are privileged, but the results of their deliberations are not privileged."  The reference to "courts and grand or petit juries" in M.R.E. 509 has not changed substantively since the 1951 MCM.[4]

---

[4] The only difference between the 1951 MCM and more modern versions of the MCM is the use of "and" versus "or."  In 1951, the MCM stated "grand or petit juries," (emphasis added), while the 2008 MCM refers to "grand and petit juries." (emphasis added).

The parties disagree on the meaning of "courts," and thus whether M.R.E. 509 applies to military judges. Appellant argues that the plain meaning of "courts" includes a military judge sitting alone. Thus, according to Appellant, M.R.E. 509 prohibits a military judge from testifying about his or her deliberative process. On the other hand, the Government argues that the history of the MCM demonstrates that "courts" does not include military judges. The Government contends that the reference to "courts" in the 1951 MCM could not have referred to a military judge sitting in a judge alone court-martial because the position of military judge did not exist prior to 1968.

"It is a well established rule that principles of statutory construction are used in construing the . . . Military Rules of Evidence . . . ." United States v. Custis, 65 M.J. 366, 370 (C.A.A.F. 2007). "'[W]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" Id. (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)) (alteration in original). "In construing the language of a statute or rule, it is generally understood that the words should be given their common and approved usage." McCollum, 58 M.J. at 340 (citation and quotation marks omitted).

Dictionaries from both today and the 1950s suggest that "court" is tantamount to "judge." According to the 1951 Fourth Edition of Black's Law Dictionary, "[t]he words 'court' and 'judge,' or 'judges,' are frequently used in statutes as synonymous." Black's Law Dictionary 425 (4th ed. 1951). The 1952 version of Webster's defines "court" as, inter alia, "a judge or judges sitting for the hearing or trial of causes. . . . The judge or judges, as distinguished from the counsel or jury." Webster's New Int'l Dictionary Unabridged 611 (2d ed. 1952). The modern-day Black's Law Dictionary defines "court" as "1. A governmental body consisting of one or more judges who sit to adjudicate disputes and administer justice . . . . 2. The judge or judges who sit on such governmental body . . . ." Black's Law Dictionary 378 (8th ed. 2004). Therefore, under the plain meaning of "courts," M.R.E. 509 could be read to include a judge, which, in turn, evolved to incorporate a military judge.

However, while the phrase "courts and grand and petit juries" has remained substantively constant over time, related sections of the MCM have changed, which may or may not alter the meaning of "courts." The 1951 MCM reference to "courts and grand and petit juries" may have referred to the deliberations of both the judge and juries in civilian courts, given that neither military judges nor grand or petit juries existed in the military justice system at that time. However, in 1968, the

18

Military Justice Act created the position of military judge and the judge alone court-martial. Military Justice Act of 1968, Pub. L. No. 90-632, 70A Stat. 37 (codified as amended in scattered sections of 10 U.S.C.). The President promulgated the Military Rules of Evidence in 1980, which expressly protects the deliberations of members in M.R.E. 606(b). Exec. Order No. 12,198, 45 Fed. Reg. 16,932 (Mar. 12, 1980). What is less clear is whether, by restricting the application of M.R.E. 606(b) to only members, the drafters intended to preclude any protection over the deliberations of military judges. See McNutt, 62 M.J. at 20 (concluding "that M.R.E. 606(b) applies to court members only"). Or, alternatively, whether the drafters determined that the reference to "courts" in M.R.E. 509 was sufficient to accomplish that goal, negating the need to either include "courts" within M.R.E. 606(b) or amend M.R.E. 509. There is no need to amend language when it already covers the intended result. See Stone v. Immigration and Naturalization Serv., 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

The canon of contextual construction that "counsels that a word gathers meaning from the words around it" also supports the conclusion that "courts" includes military judges. Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or., 515 U.S. 687, 702

(1995) (citation and quotation marks omitted). M.R.E. 509 includes a reference to both "courts and grand and petit juries" and "United States district courts." The first reference in M.R.E. 509 is to "courts," but the text later refers more specifically to "United States district courts." Thus, that initial reference to "courts" likely cannot mean only "United States district courts." Had the drafters intended the first reference to "courts" to mean civilian courts, they would not have distinguished between courts in general and "United States district courts" more specifically. Separating courts from juries also suggests that "courts" does not equal juries in M.R.E. 509.[5]

---

[5] M.R.E. 606(b) addresses if and when a court member may testify about the deliberations at the court-martial. The corollary rule regarding the competency of a military judge as a witness, M.R.E. 605, does not address inquiry into a military judge's deliberations.

> Rule 605. Competency of a military judge as witness
>
> (a) The military judge presiding at the court-martial may not testify in that court-martial as a witness. No objection need be made to preserve the point.
>
> (b) This rule does not preclude the military judge from placing on the record matters concerning docketing of the case.

M.R.E. 605. Nevertheless, the application of M.R.E. 606 to only court members does not preclude M.R.E. 509 from applying to military judges. M.R.E. 606 limits M.R.E. 509 to the extent M.R.E. 509 protects the deliberations of court members; however, this limitation does not prevent or preclude M.R.E. 509 from applying to a military judge's deliberations.

Given the plain meaning of the word "courts," it is reasonable to conclude that M.R.E. 509 includes military judges within its ambit. However, while M.R.E. 509 reaches military judges, it is unclear whether M.R.E. 509 <u>protects</u> the deliberative process of military judges or, alternatively, whether it creates a <u>privilege</u> that shields such information but requires affirmative judicial invocation similar to that required by other privileges embodied in the Military Rules of Evidence.

## II.  A "Protection" or a "Privilege"

There are at least two reasonable ways to interpret the term "privilege" in M.R.E. 509, in the absence of legislative history, controlling guidance in the <u>MCM</u> discussion or analysis, or case law.[6]  First, because the drafters included M.R.E. 509 in the Privileges section of the Military Rules of Evidence, alongside privileges such as the lawyer-client privilege, M.R.E. 502, husband-wife privilege, M.R.E. 504, and the psychotherapist-patient privilege, M.R.E. 513, one might infer that "privilege" should be interpreted similarly to the way the term is used in the context of other privileges.  Under this reading, by using "privilege" to describe the limitation on disclosing the deliberative processes of military judges, M.R.E.

---

[6] Of course, one reason that scant guidance exists is because the issue of judicial testimony rarely arises.

509 would confer upon a person or an institutional entity an affirmative privilege against disclosure of certain information. That person or institution would hold the privilege, could assert the privilege, and could voluntarily waive such privilege.

Second, and alternatively, because M.R.E. 509 defines the scope of the privilege as coterminous with that found in "trial of criminal cases in the United States district courts," one might look to federal evidentiary law to determine the meaning of "privilege" in this specific context. An examination of federal evidentiary law, however, reveals that the civilian federal courts recognize a general rule against review of a trial judge's deliberative process, rather than a privilege over such information that can be invoked and waived, such as the privilege that exists in the context of the attorney-client relationship. Fayerweather v. Ritch, 195 U.S. 276, 306-07 (1904); Perkins v. LeCureux, 58 F.3d 214, 220 (6th Cir. 1995), superseded by statute on other grounds, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA); Washington v. Strickland, 693 F.2d 1243, 1263 (5th Cir. 1982), rev'd on other grounds, 466 U.S. 668 (1984), superseded by statute on other grounds, AEDPA; United States v. Crouch, 566 F.2d 1311, 1316 (5th Cir. 1978), abrogated on other grounds by United States v. Singleterry, 683 F.2d 122

(5th Cir. 1982); Morrison v. Kimmelman, 650 F. Supp. 801, 806 (D.N.J. 1986), superseded by statute on other grounds, AEDPA. Thus, the deliberative process of a judge in civilian court is subject to protection rather than a claim of privilege in the traditional legal sense.

In our view, both readings are plausible.  Therefore, consistent with M.R.E. 101, and the text of M.R.E. 509 itself, we look to the Federal Rules of Evidence and federal common law generally to interpret M.R.E. 509 and adopt the prevailing federal common law rule that the deliberative process of judges is protected from disclosure.[7]

---

[7] "M.R.E. 101(b) instructs military courts to look to the federal rules and the common law for guidance on evidentiary issues where doing so is 'not otherwise prescribed in [the] Manual . . . and insofar as practicable and not inconsistent with or contrary to the code or [the] Manual.'"  McCollum, 58 M.J. at 341 (quoting M.R.E. 101(b)) (alteration in original).  M.R.E. 101(b) further mandates that, when looking to such federal law, military courts should consider:

> (1)  First, the rules of evidence generally recognized in the trial of criminal cases in the United States district courts; and
>
> (2)  Second, when not inconsistent with subdivision (b)(1), the rules of evidence at common law.

The Federal Rules of Evidence do not expressly protect the deliberative processes of judges or treat such information as privileged.  See Fed. R. Evid. 501.  However, federal common law does provide such a protection.

III.  Federal Common Law

An analysis of federal common law on the deliberative process of judges usually begins with Fayerweather, 195 U.S. 276.  In Fayerweather, the Supreme Court stated that "no testimony should be received except of open and tangible facts," emphasizing the potential for a negative effect on the judicial system if such testimony were permitted:

> [T]he testimony of the trial judge, given six years after the case has been disposed of, in respect to the matters he considered and passed upon, was obviously incompetent.  True, the reasoning of the court for the rule is not wholly applicable, for as the case was tried before a single judge there were not two or more minds coming by different processes to the same result.  Nevertheless no testimony should be received except of open and tangible facts -- matters which are susceptible of evidence on both sides.  A judgment is a solemn record.  Parties have a right to rely upon it.  It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.

Id. at 306-07.[8]

---

[8] Later, when discussing the protection of administrative deliberative processes, the Supreme Court stated that:

> The proceeding before the Secretary [of Agriculture] has a quality resembling a judicial proceeding.  Such an examination of a judge would be destructive of judicial responsibility. . . . Just as a judge cannot be subjected to such a scrutiny . . ., so the integrity of the administrative process must be equally respected.

United States v. Morgan, 313 U.S. 409, 422 (1941) (citations and quotation marks omitted).  We recognize that the deliberative processes of agencies are protected by a privilege in the traditional sense that agency officials hold and can waive,

24

United States v. Matthews, No. 08-0613/AR

Based on the Fayerweather foundation, other courts have similarly limited the post-trial testimony of judges.

> [T]he overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties.

United States v. Roth, 332 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004) (refusing to permit a party to subpoena, and thus compel, the judge to testify concerning his deliberative process); see also Crouch, 566 F.2d at 1316 ("A judge's statement of his mental processes is absolutely unreviewable."). "[T]his [protection] must be construed and applied with the greatest care for fear that it be misused or abused." Standard Packaging Corp. v. Curwood, Inc., 365 F. Supp. 134, 135 (N.D. Ill. 1973) (analogizing the protection provided by the "mental processes" rule to a "testimonial 'privilege'"). While the case law is often inconsistent in its terminology, whether describing the limitation on deliberative process testimony as a privilege, a protection, inadmissible evidence, or some other characterization, the operation and application of the

_____

which differs from the manner in which federal courts have protected the deliberative processes of judges. However, while "[t]he inner workings of administrative decision making processes are almost never subject to discovery[,] . . . the inner workings of decision making by courts are kept in even greater confidence." Goetz v. Crosson, 41 F.3d 800, 805 (2d Cir. 1994) (citations omitted).

25

limitation is the same -- courts will not review the deliberative process of a judge.  Crouch, 566 F.2d at 1316.

While the underlying principle holds firm, federal courts have stopped short of prohibiting judicial testimony entirely and have employed a "case-by-case" evaluation to delineate between protected and unprotected testimony.  Standard Packaging Corp., 365 F. Supp. at 135.  A number of decisional trends appear.

The most common line of demarcation is between factual testimony and testimony about a judge's deliberative process, as suggested in Fayerweather itself.  195 U.S. at 306-07.  While a judge may testify "to the extent [the testimony] contains personal knowledge of historical facts or expert opinion[,]" a court may not consider testimony in which a judge explains his reasoning and deliberative process for reaching a decision. Washington, 693 F.2d at 1263.  Thus, federal courts have permitted judicial testimony about facts when a sufficient basis exists for calling the judge to testify and those facts are unavailable from other sources.  United States v. Roebuck, 271 F. Supp. 2d 712, 719-21 (D.V.I. 2003); United States v. Edwards, 39 F. Supp. 2d 692, 706 (M.D. La. 1999); United States v. Frankenthal, 582 F.2d 1102, 1106, 1108 (7th Cir. 1978) (concluding that a judge could properly testify when that judge was the sole possessor of certain facts through which the

accused was attempting to prove witness bias).  However,

questions posed to a judge to elicit historical facts cannot

"probe into the mental processes employed in formulating the

judgment in question."[9]  Roebuck, 271 F. Supp. 2d at 719.

Further, a judge may be permitted to testify where a

credible showing of judicial misconduct exists.  Id. at 718.

> Only in the most extraordinary of cases, such as a strong
> showing of bad faith or improper behavior by a judge or
> quasi-judicial officer or where circumstances were such to
> overcome the presumption of regularity as to the acts of
> the decision maker, may a judge be questioned as to matters
> within the scope of his adjudicative duties.

Id.[10]

---

[9] In a case involving a habeas hearing, the United States Court
of Appeals for the Seventh Circuit found that not all policy
reasons support a distinction between testimony concerning facts
and testimony concerning deliberative processes.  Weidner v.
Thieret, 932 F.2d 626, 632-33 (7th Cir. 1991), superseded by
statute on other grounds, AEDPA.

> Memories of mental processes are not . . . more
> perishable than memories of historical facts.  Both
> potentially pose the same threat to the finality of a
> judgment, as finality may be called into question
> equally by a judge's memory of what happened at a
> particular moment at trial and a judge's memory of why
> she ruled a certain way on a particular motion.

Id. at 632.  However, the Weidner court noted a separate
distinction in that testimony about mental processes is
"essentially irrebuttable," while a party may be able to rebut a
judge's testimony about historical facts.  Id.

[10] In surveying the federal common law, we recognize as well that
a few federal courts have allowed state court judges to testify
or submit affidavits in the context of habeas hearings.  See
Weidner, 932 F.2d at 633 (concluding the court did not "clearly
err" when permitting state judge to submit an affidavit in a

IV.  Applying M.R.E. 509 and Common Law to this Case

In this case, the CCA ordered a DuBay hearing to examine "[w]hether the military judge properly applied Mil. R. Evid. 512(a)(2) . . . ." and "[w]hat, if anything, did the military judge say concerning PVT Gibson's credibility . . . ." Matthews Order, No. ARMY 20030404, slip op. at 6.  The Government called the trial military judge to testify at the DuBay hearing and questioned the judge about his reasoning and motives for his holdings at Appellant's court-martial.  We recognize that the questions posed to the trial military judge were an attempt to obey the CCA's order, however, such a practice is ill-advised, regardless of which party calls or compels the trial military judge to testify.

> While it is true that the rule has generally been
> applied where the party adverse to the judgment or
> record calls an unwilling judicial or quasi-judicial
> officer for the purpose of contradicting or impeaching
> the record . . ., it does not necessarily follow that
> the result is or should be quite different when the
> testimony of the judge or administrative officer is
> ostensibly offered to support the position sustained
> [below] . . . .

---

habeas hearing); Wilson v. Lash, 457 F.2d 106, 110 (7th Cir. 1972) (permitting state judge to testify at habeas hearing about the quality of defense counsel's performance at trial), superseded by statute on other grounds, AEDPA.  However, this practice appears more akin to a remand for further analysis or factfinding than it is to exploration of a judge's deliberative process, and the cases were decided before Congress passed the AEDPA, which had a significant effect on habeas corpus jurisprudence.  Given the absence of authoritative sources on judicial testimony, we nonetheless draw on these cases for guidance.

Feller v. Bd. of Educ., 583 F. Supp. 1526, 1529 (D. Conn. 1984) (citation and quotation marks omitted).

Moreover, this case is not one involving issues about which federal courts have previously permitted trial judges to testify -- this is not a habeas case, there is no evidence of judicial bad faith or misconduct, and inquiry was not limited to material factual matters about which the military judge was uniquely or specially situated to testify.  To the contrary, in response to questions, the trial military judge provided lengthy testimony about his deliberative process for deciding how to rule on certain issues at the court-martial.  In fairness to the CCA, the DuBay military judge, and the trial military judge, there is no definitive military case law from this Court on this issue, and sparse federal case law.  But there is a reason for that: permitting judicial deliberative process testimony is a bad idea, and thus few courts have done so or have addressed these issues.

The limited federal common law that exists, predicated on Fayerweather, explains why a military judge's deliberative process should generally be free from consideration in post-judgment proceedings.  First, "[t]he prohibition against compelling the testimony of a judge is to protect the integrity of the legal system itself."  Roebuck, 271 F. Supp. 2d at 722.  Permitting a military judge to testify about his deliberative

29

process in making a decision at the court-martial could expose the judicial system and its judges to "frivolous attacks upon its dignity and integrity, and interrupt[] . . . its ordinary and proper functioning." United States v. Dowdy, 440 F. Supp. 894, 896 (W.D. Va. 1977) (citation and question marks omitted) (omission in original).

Second, such testimony threatens the finality of judgments. Washington, 693 F.2d at 1263. "When a verdict is rendered, neither the judge nor the jury is asked for justifications. The decision may be reviewed and reversed, modified or amended. However, the trier of fact is not to be placed on the witness stand and cross examined as to the reasons for the outcome, absent evidence of improprieties in the decision making process itself." Morrison, 650 F. Supp. at 807.

Third, deliberative process testimony disrupts one of the basic tenants of evidentiary law -- reliability. Testimony about a judge's deliberative process poses special risks of inaccuracy. Id. Here, the trial military judge testified at the DuBay hearing three years after the court-martial. We do not doubt the good faith ability of a military judge to recall exact details about a court-martial that occurred several years prior. However, the potential for inaccurate recollections generally outweighs the probative value that such evidence may have. Washington, 693 F.2d at 1263; see also Perkins, 58 F.3d

30

at 220 (holding that the district court could not consider the trial judge's statements about a case that took place over ten years prior). Moreover, alerted to the legal question in appellate controversy, a judge might consciously or subconsciously attempt to perfect the record in order to withstand appellate review, and do so in good faith.

Fourth, the concerns surrounding deliberative process testimony are compounded because a judge's testimony regarding his own deliberations is "essentially irrebuttable." Weidner, 932 F.2d at 632.

> Admitting the testimony of the decision-maker below not only places a heavy burden on the party opposing [that] testimony because of that decision-maker's virtually unimpeachable credibility, but it becomes practically impossible for a party to challenge the mental impressions of a [decision-maker], as his thought process is known to him alone.

Rubens v. Mason, 387 F.3d 183, 191 (2d Cir. 2004) (citation and quotation marks omitted) (alterations in original).

Fifth, the medium for evaluating a military judge's reasoning is the record of trial, not a DuBay hearing. Allowing a military judge to testify about his reasoning for a particular decision provides a disincentive for sufficiently articulating his holdings on the record. Further, parties could also take advantage of such a tool to correct record errors to which they failed to object or request further explanation from the

31

military judge.[11]  "It is inappropriate . . . to base an appellate opinion on assertions dehors the record."  Crouch, 566 F.2d at 1316 (citation and quotation marks omitted) (omission in original); see also Proffitt v. Wainwright, 685 F.2d 1227, 1255 (11th Cir. 1982) ("Such post-decision statements by a judge . . . about his mental processes in reaching decision may not be used as evidence in a subsequent challenge to the decision."), superseded by statute on other grounds, AEDPA, as recognized in Moore v. Campbell, 344 F.3d 1313, 1324 n.9 (11th Cir. 2003).

Appellant originally appealed to the CCA to determine whether the trial "military judge erred by allowing trial counsel to comment upon the defense witness['s] . . . invocation of his Fifth Amendment privilege against self-incrimination, and thereafter, improperly drawing an adverse inference based on those comments."  Matthews, 66 M.J. at 645-46.  However, Fayerweather cautions against consideration of the judge's deliberative process in response to or in evaluating that evidence.  See Brownko Int'l, Inc. v. Ogden Steel Co., 585 F. Supp. 1432, 1436 (S.D.N.Y. 1983) (concluding that "the [Supreme] Court in Fayerweather[, 195 U.S. at 306-07] in no circumstances condones the testimony of the trial judge himself to explain his decision").

---

[11] For example, parties may seek to supplement the record regarding the manner in which M.R.E. 403 was applied or the reasons for seating a contested member.

This is not a case where the underlying appeal or policy implications compel testimony from the trial military judge about his reasoning or motivations. Thus, in formulating its opinion, the CCA should not have considered the trial military judge's testimony at the DuBay hearing that described his deliberations at the court-martial, regardless of whether the trial military judge was willing to testify.

The Government contends that because the military judge provided a brief recitation of the facts and his findings on the record, he "waived his deliberative privilege" and could "appropriately testif[y] about those limited matters during the Du[B]ay hearing." Under this reasoning, any time a military judge makes findings of fact or conclusions of law on the record, he can later be called upon to explain these findings in more detail in a subsequent proceeding. This is inconsistent with M.R.E. 509's incorporation of federal common law, which protects a military judge's deliberative process, and with the policy supporting such a protection. "If a judge seeks to give reasons for a decision, we are wiser for what is said on the record. However, once a judicial opinion is written and filed, we are all as expert in its interpretation as the hand that wrote it. It belongs to us all." Morrison, 650 F. Supp. at 807.

In summary, it is "well-settled law that testimony revealing the deliberative thought processes of judges . . . is inadmissible." Rubens, 387 F.3d at 191. Therefore, we hold that the portions of the trial military judge's DuBay testimony in which he explained his deliberative process and reasoning at the court-martial are unreviewable evidence that cannot be considered by the CCA in this case. Perkins, 58 F.3d at 220; Washington, 693 F.2d at 1263.

Our conclusion is consistent with the Military Rules of Evidence, the Rules for Courts-Martial, and this Court's previous case law. M.R.E. 601 indicates that "[e]very person is competent to be a witness except as otherwise provided in these rules." Indeed, the subsequent evidentiary rules limit this general principle with regard to who may testify and the subject matter to which that person may testify. While M.R.E. 605, which addresses the competency of a military judge to serve as a witness, does not address a military judge's deliberative process, M.R.E. 605 is generally one of exclusion, rather than inclusion. See Roth, 332 F. Supp. 2d at 566 (interpreting the corollary Federal Rule of Evidence).[12] Further, our decision is

---

[12] In keeping with this principle, some judges have refused to testify when subpoenaed. See In re Cook, 49 F.3d 263, 265 (7th Cir. 1995) (noting that the trial judge declined to testify about the proceedings at trial); Crenshaw v. Dywan, 34 F. Supp. 2d 707, 710 (N.D. Ind. 1999) (finding that the court could properly decline to submit to a deposition).

consistent with McNutt, 62 M.J. 16.  In that case, we stated

that:

> Our holding in this case in no way implies that the
> mental deliberations of military judges are not
> protected or that the decision-making processes of
> military judges are more open to scrutiny than the
> decision-making processes of members.  We hold only
> that M.R.E. 606(b) is not the vehicle to protect those
> mental processes of military judges.

Id. at 20 n.26.  Today we hold that the federal common law

protection of the deliberative processes of judges is

incorporated into military law through M.R.E. 509, and

encompasses military judges sitting alone.  Although the term

"privilege" in this context is ambiguous, we interpret it in a

manner consistent with federal common law, and thus also in a

manner consistent with both M.R.E. 509 and M.R.E. 101.

CONCLUSION

In this case, we do not know the extent to which the CCA

considered the testimony of the military trial judge regarding

his deliberative process in applying M.R.E. 512, if at all.  In

light of our conclusion that such testimony is unreviewable, the

appellate record does not now reflect whether or not the lower

court would have reached its conclusion on harmless error

without considering that testimony.  Therefore, the decision of

the United States Army Court of Criminal Appeals is set aside.

The record of trial is returned to the Judge Advocate General of

the Army for remand to that court for review consistent with this opinion.